# NO. 12-12-00363-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

|  |  |  |
|---|---|---|
| *IN THE ESTATE OF* | § | *APPEAL FROM THE* |
|  | § | *COUNTY COURT AT LAW #2* |
| *EDYTHE A. MILLER* | § | *GREGG COUNTY, TEXAS* |

## *OPINION*

Richard Miller appeals the trial court's denial of his amended claim in the probate proceeding of his mother, Edythe A. Miller. Richard's siblings, Mary Margaret Miller and Joseph Michael Miller, are the appellees. In two issues, Richard contends the trial court's letter ruling precluded his opportunity to request further findings of fact and conclusions of law and the trial court erred in denying the amended claim. We affirm.

### BACKGROUND

Richard's mother, Edythe, suffered a debilitating stroke in 1993. Richard assumed the responsibility of providing twenty-four hour care for Edythe after his father died in February 1997. Edythe died on April 2, 2005, and almost four years later, on March 31, 2009, Richard filed an application to probate her will. The following year, Richard and his sister were appointed independent coexecutors of Edythe's estate. Richard filed a claim for $75,661.29 and a memorandum of allowance in Edythe's probate proceeding. Appellees objected, in part, that the claim was barred by limitations. Richard then filed an amended claim for $76,829.29 and a memorandum of allowance.

Attached to both claims were financial records relating to Richard's assertion that he and his mother regularly loaned each other money after his father died. Richard's claim was for the

amount by which his loans to Edythe exceeded her loans to him.[1]  In addition, Richard attached as Exhibit B to his amended claim the following agreement that he signed individually and as Edythe's attorney in fact pursuant to a durable power of attorney she executed prior to her stroke.

EXHIBIT B

Agreement for Reimbursement

We, Edythe A. Miller and Richard E. Miller (the parties)[,] enter into this agreement for reimbursement under the following terms and conditions.

The parties have loaned funds to each other to facilitate and provide for the day-to-day health care and maintenance of Edythe A. Miller.  The necessity for these loans to continue throughout the natural lifetime of Edythe A. Miller is anticipated.  The amount and frequency of the loans is indeterminate, but shall be made as necessary to provide for the health care and maintenance of Edythe A. Miller.

It is agreed that following the death of either party to this agreement the net sum loaned by, between, or on behalf of each party to the other shall be calculated and compared.  The greater sum loaned to one party by the other, if any, shall be reimbursed and payable by the other party or the other party's estate within ten (10) years from the date of death of Edythe A. Miller or Richard E. Miller, whichever first occurs.  These loans shall bear no interest.

Signed on February 23, 1999.

Edythe A. Miller

By:  /s/Richard E. Miller
Richard E. Miller, Attorney-In-Fact

/s/Richard E. Miller
Richard E. Miller

After a hearing, the trial court, by separate orders, denied Richard's original and amended claims.  Richard filed a request for findings of fact and conclusions of law.  The trial court did not comply, and Richard filed a notice of past due findings and conclusions.  Again, the trial court did not comply, and Richard filed a notice of appeal to this court.

## REQUEST FOR ABATEMENT

As a preliminary matter, we address Richard's second issue, in which he asserts that the trial court erred in failing to respond to his request for findings of fact and conclusions of law and

---

[1] The documentation attached to Richard's amended claim shows Richard made "loans" to Edythe in the sum of $470,289.81, and Edythe made "loans" to Richard in the sum of $393,460.52.  Almost all of the loans were made during the years 2000 through 2006, but some were made in 1998 and 1999.

his notice of past due findings and conclusions. Richard acknowledges that the trial court issued a letter explaining its ruling, but argues that even if the letter constitutes findings, it is incomplete and he was not allowed the opportunity to request additional findings. He asks that this appeal be abated and the cause remanded for entry of formal findings and conclusions, which would afford him the opportunity to review them and request additional findings as needed.

## Findings of Fact and Conclusions of Law

Following a bench trial, and within twenty days after the judgment is signed, any party may request the trial court to file written findings of fact and conclusions of law. TEX. R. CIV. P. 296. The trial court must file its findings and conclusions within twenty days after a timely request is filed. TEX. R. CIV. P. 297. If the court fails to comply, the requesting party may file a notice of past due findings within thirty days of the original request. *Id.*

There is a general presumption of validity extending to the judgment of a court of general jurisdiction, regardless of whether the judgment is the result of a jury trial or a bench trial. *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 250 (Tex. App.–Houston [14th Dist.] 1999, pet. denied). To limit the scope of the presumption, it is advantageous to the appellant to narrow the issues on appeal by requesting findings of fact and conclusions of law after a bench trial. *Id.* The court's findings of fact form the basis of the judgment upon all grounds of recovery and defenses. TEX. R. CIV. P. 299.

When a court makes fact findings but inadvertently omits an essential element of a ground of recovery or defense, the presumption of validity will supply by implication any omitted unrequested element that is supported by evidence. *See* TEX. R. CIV. P. 299. To prevent a missing element from being deemed on appeal, an appellant may request additional findings on omitted elements. *See* TEX. R. CIV. P. 298. The failure to do so waives the party's right to complain on appeal about a presumed finding. *Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 408 (Tex. App.–Dallas 2006, no pet.).

Findings of fact and conclusions of law need not be in any particular form. *Moore v. Jet Stream Invs., Ltd.*, 315 S.W.3d 195, 208 (Tex. App.–Texarkana 2010, pet. denied). But they must be in writing and filed with the clerk of the court. TEX. R. CIV. P. 296. It is possible for findings and conclusions to be contained in a trial court's letter to counsel if the letter is filed of record. *Moore*, 315 S.W.3d at 208.

Findings of fact in a case tried to the court have the same force and dignity as the findings made by a jury in its verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). They are binding on an appellate court unless the contrary is established as a matter of law, or there is no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Anderson*, 806 S.W.2d at 794.

We review a trial court's conclusions of law de novo. *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996). When performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Sembera v. Petrofac Tyler, Inc.*, 253 S.W.3d 815, 822 (Tex. App.–Tyler 2008, pet. denied). To make this determination, we consider whether the conclusions are correct based on the facts from which they are drawn. *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 529 (Tex. App.–Houston [1st Dist.] 2007, no pet.).

## Effect of the Trial Court's Letter

After the hearing on Richard's amended claim, the trial court sent counsel[2] a letter identifying the matters it had considered. The letter bore the same date as the court's order denying Richard's original claim, and the order is referenced in the letter. Four days later, the trial court signed an order denying Richard's amended claim. The letter and both orders were filed of record on the same date.

The trial court's letter informed counsel that it was disapproving Richard's amended claim. After reciting a brief procedural history, the court stated that "absent any tolling of the claims as presented, any amounts in the Claim prior to July 13, 2006, would be barred by limitations."

The trial court stated further that, as to the items prior to July 13, 2006, for which Richard seeks reimbursement, (1) it "finds" the Agreement for Reimbursement benefited Richard and "would be self-dealing"; (2) the power of attorney does not specifically authorize acts that benefit the agent acting under it; and (3) it "finds" that the agreement is unenforceable and did not toll the running of limitations.[3] As to the items after July 13, 2006, the court stated that (1) it "finds" the Agreement for Reimbursement does not contain sufficiently specific terms to bind Edythe to pay a

---

[2] Richard, who is an attorney, represented himself at trial.

[3] The agreement provides that reimbursement is payable by the party owing it or that party's estate "within ten (10) years from the date of death of Edythe A. Miller or Richard E. Miller, whichever first occurs." The limitations period for a suit for debt is four years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3) (West 2002).

4

loan; (2) the act of an agent executing an agreement on behalf of the principal "creating an indebtedness in favor of the agent[] would also constitute self-dealing"; and (3) a specific provision in the power of attorney is necessary to authorize "such an act" benefiting the acting agent. The court also cited controlling authority.

In reviewing the case law, we note that ***Cherokee Water Co. v. Gregg County Appraisal Dist.***, 801 S.W.2d 872 (Tex. 1990), is frequently cited for the proposition that a trial court's prejudgment letter is not competent evidence of the basis for its judgment. In that case, the trial court sent the parties a prejudgment letter indicating it had considered certain evidence in making its ruling. ***Id.*** at 878. However, the formal findings of fact and conclusions of law, filed after the judgment was signed, included no reference to the evidence. ***Id.*** Cherokee Water contended that the prejudgment letter was a finding of fact, and that the letter and the formal findings and conclusions should be read together. *See* ***id.***

The supreme court noted that the formal findings and conclusions did not state whether the trial court considered the evidence. ***Id.*** Therefore, the court reasoned, the trial court could have disregarded the evidence at the time the judgment was actually signed. ***Id.*** Consequently, the court held that the prejudgment letter was not a finding of fact as contemplated by rules of civil procedure 296 through 299. ***Id.***

Here, the trial court filed only a prejudgment letter. Thus, ***Cherokee Water*** is factually distinguishable from the case at bar. Richard contends, however, that the letter cannot constitute findings and conclusions because it contains no statement indicating that the trial court intended it for that purpose.

We are aware that some courts have considered a statement of such an intent to be a significant factor in distinguishing ***Cherokee Water***. *See, e.g.*, ***Kendrick v. Garcia***, 171 S.W.3d 698, 702 (Tex. App.–Eastland 2005, pet. denied) (distinguishing ***Cherokee Water*** because trial court in ***Kendrick*** had not filed formal findings and conclusions and letter to parties contained statement that trial court intended appellate courts to rely on letter as basis for trial court's decision). But we have determined that ***Cherokee Water*** does not apply here. And we know of no case, and Richard has not cited any case, holding that a statement of intent is required for a trial court's prejudgment letter to constitute findings of fact and conclusions of law.

In sum, the trial court's prejudgment letter provides an extensive explanation of the basis for its ruling, which satisfies the purpose of Rule 296. *See* ***IKB Indus. (Nigeria) Ltd. v. Pro-Line***

***Corp.***, 938 S.W.2d 440, 442 (Tex. 1997) (holding that purpose of Rule 296 is to give party a right to findings of fact and conclusions of law on issues adjudicated after trial on merits to court); *see also* TEX. R. CIV. P. 206. Although the letter was dated four days prior to the order denying Richard's amended claim, the letter and the order were filed of record on the same date (July 23, 2012). And the trial court did not file formal findings of fact and conclusions of law, even after Richard requested them and filed a notice of late findings and conclusions. Based upon these facts, we hold that the trial court's letter contains its findings of fact and conclusions of law pertaining to the denial of Richard's amended claim. *See* TEX. R. CIV. P. 296; *cf.* ***Rose v. Woodworth***, No. 04-08-00382-CV, 2009 WL 97256, at *1 (Tex. App.–San Antonio Jan. 14, 2009, no pet.) (mem. op.) (holding Rule 296 satisfied where trial court did not file requested formal findings and conclusions but issued postjudgment letter providing reasons for court's order and filed of record).

Upon receiving the trial court's letter, Richard could have requested additional findings of fact and conclusions of law if he believed they were warranted. *See* TEX. R. CIV. P. 298. However, the record does not reflect that he availed himself of that opportunity. Therefore, he is precluded from complaining of any implied findings presumed on appeal in support of the trial court's judgment. *See* ***Vickery***, 5 S.W.3d at 254. We overrule Richard's second issue.

### DENIAL OF AMENDED CLAIM

In his first issue, Richard contends that the trial court erred by denying his amended claim. He concedes that he owed Edythe a fiduciary duty as her attorney in fact under the power of attorney, but he maintains that the record contains no evidence that he engaged in self-dealing. Consequently, he argues, there is no evidence to support the trial court's conclusion that the Agreement for Reimbursement is unenforceable because of self-dealing.

**The Hearing**

At the hearing on Richard's amended claim, the trial court took judicial notice of the amended claim and its supporting documents, including the Agreement for Reimbursement. Richard also testified. He recounted that Edythe had a stroke in 1993, which left her "completely debilitated." Initially, Richard's father made arrangements for Edythe's care (and provided some of it himself). However, he died in February 1997, leaving "quite a bit in assets." Richard then began managing Edythe's affairs under the power of attorney she had executed shortly before her stroke. This included making arrangements for her twenty-four hour care.

6

Richard testified that "[a]s time went on, the funds became more and more critical. . . ." He stated that "when payroll would come up, there would not be enough funds in [Edythe's] accounts to handle that. There might be funds like in a CD or in some other sort of investment, and there was no ready cash to do that. So I would loan Opelika Home Healthcare [the corporation Richard created to employ home healthcare workers for Edythe] the money to make the payroll." He explained further that "[f]rom time to time, there would be extra money in her account, when I would cash in a CD, which I did from time to time. And these loans continued back and forth, back and forth during her life."

Appellees argued to the trial court that Richard had no authority to execute the Agreement for Reimbursement. They contended the agreement was "invalid or ineffective" because, by executing it, Richard exceeded his authority under the power of attorney and engaged in self-dealing. Specifically, they complained of the loans Richard made to himself from Edythe's funds and the tolling provision, which gave Edythe's estate ten years to pay the sum Edythe owed Richard.

The trial court requested that Richard "address the self-dealing issue" and posed the following question: "Is an agreement you signed as agent for your mother permitting loan transactions and tolling of any loan transactions, collection on them, would that be self-dealing? If it is[,] would that be permitted under the power of attorney?" In response, Richard told the court that it would be self-dealing if he owed the estate $76,000.00, but because Edythe owed him money instead, "no, it would not be self-dealing at all."

**Fiduciary Duty and Self-Dealing**

"Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency." *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002) (quoting RESTATEMENT (SECOND) OF AGENCY § 387 (1958)). Or as more recently formulated, an agent's duty is "to act loyally for the principal's benefit in all matters connected with the agency relationship." RESTATEMENT (THIRD) OF AGENCY § 8.01 (2006). Thus, absent the principal's consent, an agent must refrain from using his position or the principal's property to gain a benefit for himself at the principal's expense. *See Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 508-09 (Tex. 1980); *Mims-Brown v. Brown*, 428 S.W.3d 366, 374 (Tex. App.–Dallas 2014, no pet.); *see also* RESTATEMENT (THIRD) OF AGENCY § 8.01 cmt. b (2006). A "benefit" can be an advantage, a privilege, profit, or gain. BLACK'S LAW

7

DICTIONARY 166 (8th ed. 2004). If the agent gains a benefit from the unauthorized use of his position or the principal's property, he engages in self-dealing. *See **Tex. Bank & Trust***, 595 S.W.2d at 508-09; *see also **Cohen v. Hawkins***, No. 14-07-00043-CV, 2008 WL 1723234, at *6 (Tex. App.–Houston [14th Dist.] Apr. 15, 2008, pet. denied) (mem. op.).

When an agent engages in self-dealing in a transaction with his principal, the transaction is presumptively unfair and invalid. *See **Tex. Bank & Trust***, 595 S.W.2d at 507; *see also **Chien v. Chen***, 759 S.W.2d 484, 495 (Tex. App.–Austin 1988, no writ) (holding that all transactions between fiduciary and principal are presumptively fraudulent and void). This places the burden on the fiduciary to rebut the presumption by establishing the fairness of the transaction with his principal. ***Tex. Bank & Trust***, 595 S.W.2d at 509; ***Lesikar v. Rappeport***, 33 S.W.3d 282, 298 (Tex. App.–Texarkana 2000, pet. denied); *see also **Lee v. Hasson***, 286 S.W.3d 1, 21 (Tex. App.–Houston [14th Dist.] 2007, pet. denied) (holding that benefiting fiduciary must show he acted in good faith and that transactions were fair and equitable).

## The Agreement as Self-Dealing

Richard first contends that his mere execution of the Agreement for Reimbursement cannot support the trial court's conclusion that he engaged in self-dealing. We disagree. By executing the Agreement for Reimbursement in his individual and representative capacities, Richard engaged in a transaction with his principal. *See* BLACK'S LAW DICTIONARY 1535 (8th ed. 2004) (defining "transaction" as "the act or an instance of conducting business or other dealings, esp[ecially], the formation, performance, or discharge of a contract"). A contract between an agent and his principal is subject to the same scrutiny as any other transaction between them. *Cf. **Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.***, 20 S.W.3d 692, 700 (Tex. 2000) (noting that contracts between attorneys and their clients negotiated during existence of attorney-client relationship are closely scrutinized; because relationship is fiduciary in nature, such contracts are presumed unfair or invalid); ***Archer v. Griffith***, 390 S.W.2d 735, 739 (Tex. 1984) (applying same rule to contract between attorney and client relating to compensation).

Richard contends further that he could not have engaged in self-dealing because the agreement includes a recital that its sole purpose is to facilitate and provide for Edythe's health care and maintenance. By this argument, Richard appears to argue that the statement of purpose is conclusive, and thus prohibits a reviewing court from considering the substance of the agreement. We decline to adopt such a rule. *Cf. **Keck***, 20 S.W.3d at 700 ("bare recitation" that client was

8

advised in writing that independent representation would be appropriate before execution of release in favor of law firm insufficient to rebut presumption of unfairness or invalidity attaching to release).

Richard also asserts that the agreement assures "he would be repaid for [his mother's expenses] at some point either during her lifetime as money became available or on her death from any money remaining in the estate." Thus, he argues that the "loans" were actually "reimbursement."

We give contract terms their plain and ordinary meaning unless the document indicates the parties intended a different meaning. ***Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.***, 294 S.W.3d 164, 168 (Tex. 2009). In the usual sense, a "loan" is "a sum of money lent at interest" or "something lent for temporary use." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 700 (1984). "Reimbursement," on the other hand, means "repayment." ***Id.*** at 991. The Agreement for Reimbursement provides for "loans" as long as both Richard and Edythe were alive. "Reimbursement" was payable only after the death of either Richard or Edythe, whichever occurred first. Nothing in the agreement suggests that anything other than the common ordinary meaning of the terms was intended.

And finally, Richard maintains there must be evidence that he used the agreement to benefit himself at Edythe's expense and argues that the record contains no evidence of that fact.

The issue before the trial court was whether Richard used his position as Edythe's agent to gain a benefit at Edythe's expense by executing the agreement. In addition to Richard's testimony, the court had the Agreement for Reimbursement before it. Under the terms of the agreement, Richard was authorized to make loans to himself from Edythe's funds during the time Edythe and Richard were both alive. These loans were to bear no interest, and therefore Edythe would not be compensated for Richard's use of her funds. This provision benefited Richard at Edythe's expense.

The trial court gave Richard the opportunity to explain why the Agreement for Reimbursement was fair to Edythe. *See, e.g.*, ***Tex. Bank & Trust***, 595 S.W.2d at 509. Richard expressed that there would have been self-dealing only if he had owed Edythe money at her death; i.e. if he had borrowed more from Edythe than she had borrowed from him. But the trial court inquired about the execution of the agreement, not its performance. Richard did not explain to the court why the agreement was fair to Edythe. Therefore, Richard failed to rebut the presumption

that the agreement was unfair and invalid. *See Tex. Bank & Trust*, 595 S.W.2d at 509; *Lesikar*, 33 S.W.3d at 298. Nevertheless, Richard asserts that the power of attorney authorized him to execute the agreement. Appellees recognize that Edythe could have included a provision in her power of attorney that authorized her attorney in fact to engage in self-dealing, but contend she did not do so.

## Powers of Attorney Generally

A power of attorney creates an agency relationship, which is a fiduciary relationship as a matter of law. *Vogt v. Warnock*, 107 S.W.3d 778, 782 (Tex. App.–El Paso 2003, pet. denied); *Plummer v. Estate of Plummer*, 51 S.W.3d 840, 842 (Tex. App.–Texarkana 2001, pet. denied). "When persons enter into fiduciary relations[,] each consents, as a matter of law, to have his conduct towards the other measured by the standards of the finer loyalties exacted by courts of equity." *Tex. Bank & Trust*, 595 S.W.2d at 508. Consequently, a fiduciary owes his principal a high duty of good faith, fair dealing, honest performance, and strict accountability. *Sassen v. Tanglegrove Townhouse Condo. Ass'n*, 877 S.W.2d 489, 492 (Tex. App.–Texarkana 1994, writ denied).

"[A]n agent's duties of performance to the principal are subject to the terms of any contract between them." *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 702 (Tex. 2007) (quoting RESTATEMENT (THIRD) OF AGENCY § 8.07 cmt. a (2006)). Thus, the language of a power of attorney determines the extent of an agent's authority. *First Nat'l Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 145 (Tex. Civ. App.–Tyler 1979, writ ref'd n.r.e.). Unless otherwise provided by statute or law, duties owed by an agent to his principal may be altered by agreement. *Nat'l Plan Adm'rs, Inc.*, 235 S.W.3d at 700.

When we interpret a power of attorney, we construe the document as a whole in order to ascertain the parties' intentions and rights. *Kinabrew*, 589 S.W.2d at 145. In determining the limits of an agent's authority, we apply two well established rules of construction set forth by the Texas Supreme Court. First, the meaning of the general words in the document will be restricted by the context and construed accordingly. *Gouldy v. Metcalf*, 12 S.W. 830, 831 (Tex. 1889). Second, the authority will be construed strictly so as to exclude the exercise of any power that is not warranted either by the actual terms used, or as a necessary means of executing the authority with effect. *Id*.

Under these rules of construction, powers of attorney, unlike deeds and wills, are to be strictly construed, and authority delegated is limited to the meaning of the terms in which it is expressed. *Avis v. First Nat'l Bank of Wichita Falls*, 174 S.W.2d 255, 259 (Tex. 1943); *Frost v. Erath Cattle Co.*, 17 S.W. 52, 54 (Tex. 1891). And where there is a "very comprehensive" grant of general power and an enumeration of specific powers, the established rules of construction limit the authority derived from the general grant of power to the acts authorized by the language employed in granting the special powers. *Gouldy*, 12 S.W.at 831. As this court has previously held, a power of attorney is to be strictly construed to limit the authority of the attorney in fact. *Kinabrew*, 589 S.W.2d at 145. The construction of an unambiguous power of attorney is a question of law. *Id.* at 146.

**Edythe's Power of Attorney**

The power of attorney Edythe signed includes an extensive list of powers Richard could exercise as her attorney in fact, including the power to borrow money. In addition, the document includes a general statement that Richard was appointed as Edythe's "lawful attorney . . . in [her] name, place, and stead, to act in, manage, and as [her] act and deed, to do and execute . . . every act, deed or thing [Edythe] could do or execute. . . ." Richard contends this power of attorney was "a broad one" and established Edythe's intention to grant to her agent full power to act on her behalf. He asserts that his power to borrow money authorized him to execute the Agreement for Reimbursement, which allowed Edythe to borrow money from him at no interest and allowed him to recoup the money from her estate.

As pertinent here, "borrow" means "to receive something on loan with the understanding of returning it or its equivalent." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 191 (1984). Conversely, "loan" or "lend" means "to give or allow the use of (something) temporarily on the condition that it or its equivalent will be returned." *Id*. at 686, 700. Simply put, borrowing and lending are not the same, and a general grant of power cannot enlarge the power to borrow so that it includes the power to loan. *See Gouldy*, 12 S.W.at 831. Therefore, as Edythe's agent under the power of attorney, Richard had neither the power to make, nor the power to execute an agreement authorizing him to make, loans to himself from Edythe's funds.

In further support of his argument, Richard cites *Neill v. Kleiber*, 112 S.W. 694 (Tex. Civ. App. 1908). In that case, the agent named in a power of attorney was authorized to "sell, contract and convey all or any part" of a specified tract of land. *Id*. at 695. He also was granted "full

11

power by this to do with the said land as if the same was his own property." ***Id***. But the language in Edythe's power of attorney is not the "functional equivalent" of the language in ***Neill***. *See* ***Cohen***, 2008 WL 1723234, at *6 (holding that language authorizing an agent to act "in my name, place and stead in any way which I myself could do" is not functional equivalent of language in ***Neill***). Therefore, ***Neill*** is inapposite.

## Conclusion

The trial court concluded that (1) an agent's executing an agreement on behalf of the principal creating an indebtedness "in favor of the principal would . . . constitute self-dealing; (2) Richard engaged in self-dealing; and (3) the Agreement for Reimbursement was unenforceable because of his self-dealing. Because the court did not specify the precise benefit Richard received, we imply a finding that the provision in the Agreement for Reimbursement authorizing Richard to make interest-free loans to himself from Edythe's funds benefited Richard. In light of this fact, the above conclusions are correct. Additionally, the court concluded that Edythe's power of attorney did not specifically authorize acts that would benefit the agent acting under it. This conclusion is correct as well. Accordingly, we overrule Richard's first issue.

### DISPOSITION

Having overruled both of Richard's issues, we ***affirm*** the judgment of the trial court.

JAMES T. WORTHEN
Chief Justice

Opinion delivered August 13, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 13, 2014**

**NO. 12-12-00363-CV**

**IN THE ESTATE OF EDYTHE A. MILLER**

Appeal from the County Court at Law No. 2

of Gregg County, Texas (Tr.Ct.No. 2009-0119-P)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellant, **RICHARD E. MILLER**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*