

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-20-00019-CV

NANCY MOORE, APPELLANT

V.

ESTATE OF WILLIAM H. MOORE, DECEASED
RONALD KEITH MOORE AND TERESA JEAN BLACKWELL,
CO-TRUSTEES AND BENEFICIARIES OF THE WILLIAM H. MOORE
REVOCABLE TRUST AND CO-EXECUTORS OF THE ESTATE OF
WILLIAM H. MOORE, APPELLEES

On Appeal from the Probate Court No. 1
Tarrant County, Texas[1]
Trial Court No. 2014-PR00100-1-A, Honorable Chris Ponder, Presiding

July 30, 2021

MEMORANDUM OPINION

Before QUINN, C.J.,[2] and PIRTLE and DOSS, JJ.

---

[1] Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Second Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[2] Chief Justice Brian Quinn, not participating.

This case involves a family dispute over the property of William H. Moore, deceased. Following a jury trial, Appellant Nancy Moore-Vaughn appeals an adverse judgment rendered in favor of her stepchildren, Appellees Keith Moore and Teresa Jean Blackwell. Appellees appear individually and as co-trustees and beneficiaries of the William H. Moore Revocable Trust and as co-executors of the Estate of William H. Moore, deceased. We overrule each of Nancy's issues and affirm the judgment of the trial court.

Background

Keith and Teresa are the adult children of William. In 1997, William executed a Last Will and Testament and two codicils; therein he directed his residuary estate to be given to the trustee of the William H. Moore Revocable Trust.[3] When William created the trust at the same time as he executed his will, he appointed Keith and Teresa co-trustees and named them trust beneficiaries.

During this same period, William also executed a durable power of attorney, naming Nancy his attorney-in-fact. The power of attorney authorized Nancy to take certain actions and engage in transactions on William's behalf, including the power to:

> (1) Engage in and actively transact any and all lawful business of whatever nature or kind for me and in my name; * * *
>
> (2) Continue and operate any of my business operations or interests therein, collect, recover and receive all and any sums of money whatsoever due, payable or belonging to any of said business operations * * *;
>
> (3) To sign, * * * deliver, receive and possess such applications, contracts, agreements, * * * deeds, conveyances, trust deeds, * * * and other instruments in writing of whatever kind and nature as may be

---

[3] The codicils do not change the effect of this portion of William's will.

necessary or proper in the exercise of the rights and powers herein granted; * * *

(6) Endorse checks payable to me, withdraw sums on deposit in any banking institution under my name, cash social security checks, claim checks, treasury notes, or bonds or certificates of deposit owned by me and in my name;

(7) Enter into and take possession of all or any of the lands and real estate whatsoever in my name or in which I am or may be in anywise entitled or interested; * * *

Said Attorney-in-Fact shall perform these acts as fully as I might do if done in my own capacity, giving and granting unto my said Attorney-in-Fact full power and authority, to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully, to all intents and purposes as I might or could do if personally present.

In 2005, William granted Nancy a life estate in William's working interest in what the parties refer to as the "Goliad" or "Ledbetter" mineral lease in Taylor County,[4] Texas, with the remainder in Keith.

The record identifies a second oil and gas lease that the parties refer to as the "Shelton" lease. The final judgment states the Shelton lease refers to the "Oil and Gas Lease dated December 20, 2004 from Frances Sears Shelton and Fred B. Shelton, Jr. to David Y. Rogers recorded in Vol. 3066 at Page 829 covering Section 234, Block 64, H&TC Ry. Co. Survey."

---

[4] The assignment specifically describes the property as the "Oil and Gas Lease dated June 27, 1950, from Mrs. Emma Hankins to Charles W. Clark, recorded in Volume 409, Page 346 Deed Records of Taylor County, Texas., covering:

All of Goliad County School Lands, League 143. Taylor County (hereinafter referred to as said 'Lease' and said 'Lands')."

As William's health deteriorated, he became unable to manage his financial affairs. In 2011, William (via Nancy as his attorney-in-fact) sued Keith and Teresa as trustees over disputes regarding responsibility for paying for William's living expenses. The dispute was submitted to arbitration. In March 2012, an arbitration award was rendered and confirmed by a final judgment later that month. In relevant part, the award provided:

> On or before the date which is ten (10) days following the entry of the Court's judgment based on this Award of Arbitrator, Nancy will resign from her duties and responsibilities as William H. Moore's attorney-in-fact, under the Durable Power of Attorney. * * * Should Nancy not comply or timely sign the Resignation, she shall be removed as attorney-in-fact by the Court. * * *

> On or before the date which is ten (10) days following the entry of the Court's judgment based on this Award of Arbitrator, Nancy, acting as William H. Moore's attorney in fact, pursuant to the Durable Power of Attorney, shall transfer to the Trust all of William H. Moore's working interests in any and all oil and/or gas properties, including, but not limited to, the Shelton Lease in Taylor County, Texas. Nancy has no right, title or interest in any and all oil and/or gas working interests owned by William H. Moore, including, but not limited to, the Shelton Lease in Taylor County, Texas, now or at any point in time in the future. Any and all royalty interest attributable to the real property located at 1016 Chasemore Court, Mansfield, Texas belongs to Nancy.

The evidence is unclear whether Nancy ever resigned as attorney-in-fact; when asked at trial, Nancy replied, "Let's say we did. I can't answer that." The record does suggest that while she still had the power, on April 11, 2012, acting individually and as William's attorney-in-fact, Nancy executed an assignment purporting to transfer William's interest in the Goliad-Ledbetter lease to the trust. Nancy never transferred any interest in the Shelton lease; she continued depositing production revenue checks to an account she and William jointly owned, even after she thought her powers of attorney had expired and after William's death.

4

William died in January 2014.  Nancy executed division orders, effective May 1, 2014, concerning production on the Shelton lease.  These documents refer to "Nancy K. Moore life estate remainder R. Keith Moore," and were signed by Nancy, as owner.  Nancy began receiving and depositing revenue production checks on the Shelton lease, made payable to her.

Another round of litigation occurred between Nancy, Keith, and Teresa, this time regarding the 2012 arbitration award.  That dispute was resolved in May 2014 through a compromise settlement agreement.  In part the agreement provided:

> The Parties agree that each shall keep and own such real and personal property as they currently possess without any challenge of any other party.  In this regard, by way of example, and for the sake of clarity, Nancy [] shall have and keep as her real and personal property the residence and such gold (or proceeds), money, personal property and accounting including the IRA account awarded in the Award of Arbitrator currently in Nancy['s] possession.
>
> * * *
>
> In consideration of the payment of $75,000.00 to Nancy [] and the promises described herein, the Parties agree to Release, Acquit and Forever Discharge, each other * * * from any and all * * * judgment, claims and demands whatsoever * * * of any kind or character whatsoever . . . .

In April 2018, Keith and Teresa, in their individual and representative capacities, sued Nancy, alleging she breached her contractual duty to transfer the Shelton lease to the trust, was liable under a theory of money had and received, and breached her fiduciary duties.  The pleading sought imposition of a constructive trust, actual and exemplary damages, and attorney's fees.

Nancy answered and brought a counterclaim seeking a declaratory judgment that the 2014 settlement agreement allowed her to retain the Shelton lease, alleged that Keith

5

and Teresa breached the 2014 settlement agreement by filing their lawsuit, and sought attorney's fees.

The case was tried to a jury. Based on the jury's verdict, the trial court signed a judgment declaring "any right[,] title[,] claim or interest asserted by [Nancy] in the property known as the Shelton Lease * * * is hereby extinguished or transferred to the [trust]. [Nancy] also has no right, title, claim or interest in the Shelton Lease or any oil and gas or other mineral interest in the Shelton Lease . . . now or at any time in the future." The judgment also awarded Appellees damages of $18,753.51, prejudgment and postjudgment interest, and attorney's fees and conditional appellate attorney's fees.

**Analysis**

Through a single issue with multiple sub-issues, Nancy requests rendition of judgment that Appellees take nothing and that she be declared the "lawful owner of the Shelton Lease mineral interest." Nancy presents five sub-issues to argue: (1) The 2014 settlement agreement released Nancy from obligations under the 2012 award and judgment to transfer the Shelton lease; (2) The jury's answers to questions 1-4 were immaterial; (3) The trial court abused its discretion and reversibly erred in allowing Keith to testify of his interpretation of the 2014 settlement agreement; (4) Appellees are bound by the jury's unchallenged finding that they "failed to comply" with the 2014 settlement agreement; and (5) the trial court erred by failing to render a judgment that the settlement agreement vested the Shelton lease in Nancy.

6

**Who Owns the Shelton Lease?**

In her first sub-issue, Appellant argues the 2012 judgment "required Nancy to transfer her interest in the Shelton Lease," but that she did not do so. She reasons that when the parties entered a settlement agreement in 2014 that released her from any obligation to transfer the Shelton lease. She argues in her second and third sub-issues that the jury's adverse findings were immaterial because the purported 2014 waiver meant "she was no longer required to transfer her interest in the Shelton Lease pursuant to the Settlement Agreement." In her sixth sub-issue, Nancy argues the trial court erred in failing to declare "that the Settlement Agreement allows her to retain the Shelton Lease and that the Settlement Agreement vests interest in the Shelton Lease in her." Because these sub-issues each share as their kernel her position that the 2014 settlement agreement had the effect of vesting or recognizing Nancy's ownership of the Shelton lease, we address these arguments as a group. We disagree with the relief sought by Nancy.

The fallacy with Nancy's argument is its dependence on the faulty premise that she ever possessed any title or interest in the Shelton lease. The record shows Nancy possessed a life estate in William's working interest in the Goliad/Ledbetter mineral lease. However, no record evidence shows William gave Nancy any interest – actual or possessory – in the Shelton lease. Nor does any evidence conclusively indicate Nancy otherwise obtained title or possession of the Shelton lease in the absence of William's consent. Rather, the 2012 judgment simply required Nancy, *as William's attorney-in-fact,* to transfer *William's* interest in the Shelton lease to the trust. The 2014 settlement agreement did not, by transfer or waiver, vest the Shelton lease with Nancy.

7

Designation of an attorney-in-fact through a power of attorney is one means of creating a principal-agent relationship. Nancy's duties of performance as attorney-in-fact for William were subject to the terms of the governing document. *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 702 (Tex. 2007) (quoting RESTATEMENT (THIRD) OF AGENCY § 8.07 cmt. a (2006) ("[A]n agent's duties of performance to the principal are subject to the terms of any contract between them.")). When we interpret Nancy's rights and duties as granted under the power of attorney, we (1) restrict the meaning of the general words in the document to the context in which they exist, and (2) strictly construe Nancy's authority "so as to exclude the exercise of any power that is not warranted either by the actual terms used, or as a necessary means of executing the authority with effect." *In re Estate of Miller*, 446 S.W.3d 445, 455 (Tex. App.—Tyler 2014, no pet.) (citing *Gouldy v. Metcalf*, 75 Tex. 455, 12 S.W. 830, 831 (Tex. 1889)).

We find nothing in the power of attorney executed by William that made any transfer of the Shelton lease to Nancy. Rather, as the language and their context conclusively show, Nancy's authority to act as attorney-in-fact merely permitted her to perform "acts as fully as [William] might do if done in [his] own capacity * * *." Moreover, the 2012 arbitration and award was careful to distinguish between Nancy's responsibilities as "attorney-in-fact" for William and those in her individual capacity. Relevant here, Nancy's obligation to transfer to the trust all of William's working interest in the Shelton lease was expressly directed to "Nancy, acting as William H. Moore's attorney in fact, pursuant to the Durable Power of Attorney."

That Nancy, as William's agent, failed to fulfill her obligation to transfer the Shelton lease to the trust did nothing to contrive a personal interest in the Shelton property; nor

8

did the settlement agreement signed in May 2014. When William died in January earlier that year, Nancy's authority as attorney-in-fact ceased. *See Hardy v. Robinson,* 170 S.W.3d 777, 781 (Tex. App.—Waco 2005, no pet.) (citing former TEX. PROB. CODE ANN. §§ 486(a) & 487(a)); *see* TEX. ESTATES CODE ANN. §§ 751.054 & 751.055 (West 2020). Ergo, William's working interest in the Shelton Lease had already passed according to his will before the 2014 agreement was signed. The 2014 settlement agreement may have granted Nancy the ability to "keep and own such real and personal property as [she] currently possess[es][5] without any challenge of any other party," but no evidence in the record reflects that Nancy, individually, ever possessed any interest in the Shelton lease.

We conclude, on this record, no evidence support's Nancy's claimed entitlement to an interest in the Shelton lease. Because Nancy's first, second, third, and sixth sub-issues depend on her erroneous theory that she possesses an interest in the Shelton lease, we overrule said issues.

**Nancy's objection to Keith's parol interpretation of the 2014 settlement agreement**

Nancy next asserts the trial court abused its discretion by permitting Keith, over objection, to vary the terms of the 2014 settlement agreement by his testimony. Assuming, but without deciding, that the trial court abused its discretion in allowing Keith's explanation of mistake, the error was harmless because the outcome of the trial would have been the same without such testimony. TEX. R. APP. P. 44.1(a); *City of Austin v.*

---

[5] The parties did not define the term "possess" in the 2014 settlement agreement, so we look to the ordinary meaning of the word. The word "possess" is commonly defined as, "To have in one's actual control; to have possession of." Black's Law Dictionary 1281 (9th ed. 2009). And "to have and hold as property: OWN." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 968 (11th ed. 2003). As noted, the record provides no evidence that Nancy ever owned any interest in the Shelton lease.

9

*Roberson*, No. 13-06-00218-CV, 2008 Tex. App. LEXIS 2180, at *19 (Tex. App.—Corpus Christi Mar. 27, 2008, no pet.) (mem. op.). Moreover, Nancy likewise testified about the parties' mutual misunderstanding that the April 2012 lease assignment had been of the Shelton lease rather than the Goliad/Ledbetter lease. *See In re B.G.W.,* No. 12-13-00026-CV, 2013 Tex. App. LEXIS 7678, at *12 (Tex. App.—Tyler Jun. 25, 2013, no pet.) (mem. op.) (explaining "an error in the admission of evidence is harmless if substantially the same evidence is admitted elsewhere without objection."). We overrule this sub-issue.

**Keith and Teresa's breach of contract**

In Question 5 of the court's charge, the jury was asked, "Did [Keith and Teresa] fail to comply with the 2014 Compromise Settlement Agreement and Mutual Release?" The question was not accompanied by any instruction and did not specify any alleged act of non-compliance. The jury was not asked if the alleged breach was material. The jury was not asked if Keith's and Teresa's breach proximately caused any remediable injury to Nancy. Nor was the jury asked to state a sum of money that would fairly and reasonably compensate Nancy for her injuries.

Because the jury simply answered "Yes," without being asked for more, the parties each speculate what the jury meant in its finding of a breach. Nancy, for example, argues the jury's verdict in her favor mandates a judgment that she is, consistent with the 2014 settlement agreement, "entitled to keep and own any real and person[al] property in her possession at the time of the settlement agreement, and that Plaintiffs would not challenge her ownership and possession." While the 2014 settlement agreement

10

contains similar language to that effect, nothing in said agreement affixed Nancy's claimed entitlement to the Shelton lease. Moreover, any other number of possible breaches of the agreement could have prompted the same answer.

We decline to speculate about what the jury meant in its "Yes" answer. No party requested additional questions or instructions that might have assisted the jury in pinpointing its decision[6] and no party objected to a conflict with the jury's answers to other portions of the charge.[7] We hold that, notwithstanding a finding of a breach of contract by Appellees, the trial court did not err in rendering its judgment. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995) (a jury question may be immaterial, or harmless, "when its answer can be found elsewhere in the verdict or when its answer cannot alter the effect of the verdict.").

## Conclusion

Having overruled Nancy's appellate complaints, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice

---

[6] *See* TEX. R. CIV. P. 279. *See also* TEX. R. CIV. P. 274: "A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections."

[7] *See* TEX. R. CIV. P. 295. *See also Beltran v. Brookshire Grocery Co.*, 358 S.W.3d 263 (Tex. App.—Dallas 2011, pet. denied) (holding that complaint about irreconcilable conflict in jury's verdict is waived if no objection is made prior to jury's discharge).

11