

# NUMBER 13-23-00446-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE MATTER OF THE MARRIAGE OF MARY LISA HAIRE MULLIS AND ROBERT WESLEY MULLIS

## ON APPEAL FROM THE 28TH DISTRICT COURT OF NUECES COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron**
**Memorandum Opinion by Justice Cron**

This is an appeal from a divorce decree. The trial court granted the divorce based on insupportability, divided the community property, confirmed separate property for each spouse, and denied wife's request for spousal maintenance. In what we construe as two issues, which we have reordered, wife complains that the trial court abused its discretion by failing to: (1) grant the divorce on cruelty grounds; and (2) award her spousal

maintenance based on (A) her physical and mental disabilities, or (B) husband's history of family violence. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Appellant Mary Lisa Haire Mullis and appellee Robert Wesley Mullis were married on March 9, 2019, and separated on March 18, 2020, after Mary accused Robert of choking her in the marital residence. Robert was arrested and a magistrate entered an order of emergency protection that prohibited Robert from going within 200 yards of the marital residence.

On March 19, 2020, Mary filed an application for a temporary ex parte protective order, which was assigned to the 214th District Court. In that parallel proceeding, the 214th District Court granted the application for temporary emergency relief and, after a contested hearing, entered a final protective order, which included a finding that Robert had "committed family violence." As a result of that parallel proceeding, Mary was granted exclusive use of the marital residence for several months, and Robert was ordered to pay Mary $1,000 a month in support and all expenses associated with the marital residence during that period. Robert was also ordered to pay Mary's attorney's fees associated with the proceeding in the amount of $10,500.00.

On March 24, 2020, Mary filed her original petition for divorce on the alternative grounds of insupportability and cruelty. The divorce proceeding was assigned to the 28th District Court (the "trial court"), which conducted a bench trial on May 18 and May 22, 2023. The parties stipulated that the criminal charge against Robert was still pending at the time of trial. With respect to the choking incident, Mary testified that Robert "shoved

2

[her] against the wall and proceeded to choke [her] with both hands." She said she could not breathe, her eyes began to sting, and she urinated on herself before she was able to break away and call police. She also testified that she visited her primary care physician the following day, and medical records from that visit were introduced into evidence. The physician noted that Mary presented with "swelling" in her oral cavity and "bruising and laryngeal trauma from strangulation." Robert initially denied the choking allegation but thereafter invoked his Fifth Amendment right against self-incrimination.

With respect to her request for spousal maintenance, Mary testified that she suffers from physical and mental disabilities that have prevented her from maintaining gainful employment, that she is currently unemployed, that she has moved in with her brother and sister in-law and relies on them for financial support, and that her monthly expenses are $1,407.09. Robert argued in closing that the trial court should deny Mary's request for spousal maintenance for various reasons, including the fact that Robert had already expended significant funds to support Mary during the pendency of the suit. After taking the matter under advisement, the trial court issued a letter ruling, which included the following findings of fact and conclusions of law, among others:

> The Wife is claiming cruelty and domestic violence as well as insupportability as cause[s] of the dissolution of the marriage. Based on the evidence presented, the allegation of an attempt to choke was made by the Wife against the Husband, the criminal matter is still pending, and other than the one allegation, no other acts of domestic violence w[ere] presented. The Court finds no evidence of cruelty or domestic violence but finds that the marriage was insupportable with no expectation of reconciliation.
>
> . . . .
>
> The Court finds that during Temporary Orders, the wife was allowed

to reside in the Husband['s] separate property from March to October 2022 (approx. 7 months). The Court further finds that during that period[,] Husband paid for all the utilities and other household expenses. The Husband also paid $2,500.00 to assist her to move out. And due to the condition of the home, Husband had to pay to clean his home . . . when Wife moved out.

. . . .

The evidence was presented that Husband's retirement account accumulated from his employer between date of marriage and date of filing for divorce was $7,192.00. The circumstances that prevented finalization of the divorce was due to many reasons such as Wife's previous attorney withdrawing and various requests by Wife to continue this matter. This divorce could have been resolved and finalized sooner. (See attached court hearing summary)[.] The Husband agrees to pay her $7,192.00 as her share of the retirement during this period. Court awards Wife $7,192.00 payable in 30 days after final order is signed.

The Court finds that the Husband has extended well over sufficient funds in support, including rent and utilities for 7 months, $10,500 for attorney's fees, $2[,]500 for moving expenses, as well as for cleaning expenses, and $7,192.00 as her portion of his retirement. Therefore, no spousal support is Ordered.

. . . .

Counsel are ordered to submit final Orders reflecting the above.

On July 11, 2023, the trial court entered a final decree of divorce consistent with its letter ruling. The parties did not formally request findings of fact and conclusions of law, and none were made. Rather, Mary filed a motion for new trial challenging the trial court's findings and conclusions in its letter ruling, and Robert filed a response in opposition explaining why the trial court's findings and conclusions were supported by the record. The motion for new trial was overruled by operation of law, and this appeal ensued.

4

## II.    STANDARD OF REVIEW

We generally apply an abuse of discretion standard to both of Mary's issues. *See Villalpando v. Villalpando*, 480 S.W.3d 801, 805 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (grounds for divorce); *Smith v. Smith*, 115 S.W.3d 303, 305 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) (spousal maintenance). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles. *In re K.L.C.*, 672 S.W.3d 734, 743 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Id.* "However, a trial court has no discretion to incorrectly analyze or apply the law, and its clear failure to analyze or apply the law correctly is an abuse of discretion." *Johnson v. Kimbrough*, 681 S.W.3d 430, 439 (Tex. App.—Austin 2023, no pet.) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)). Stated differently, "an erroneous application of law to facts is always an abuse of discretion." *In re Facebook, Inc.*, 625 S.W.3d 80, 86 (Tex. 2021) (orig. proceeding). "Appellate courts presume that a trial court, sitting without a jury, applied the correct standard of proof or of law absent a showing to the contrary, and it is the appellant's burden to show that the proper standard was not applied." *Kimbrough*, 681 S.W.3d at 441 (collecting cases).

## III.    FINDINGS OF FACT & CONCLUSIONS OF LAW

As a preliminary matter, we address the effect of the trial court's letter ruling, which contained extensive factual findings and conclusions of law. Following a bench trial, and within twenty days after the judgment is signed, any party may request the trial court to

5

file written findings of fact and conclusions of law. Tᴇx. R. Cɪᴠ. P. 296. Findings of fact in a case tried to the court have the same force and dignity as the findings made by a jury in its verdict, and we apply the same sufficiency standards as if reviewing evidence supporting a jury's answer. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We review a trial court's conclusions of law de novo. *In re Ill. Nat'l Ins. Co.*, 685 S.W.3d 826, 835 (Tex. 2024) (orig. proceeding). "When performing a de novo review, we exercise our own judgment and redetermine each legal issue. To make this determination, we consider whether the conclusions are correct based on the facts from which they are drawn." *W. Tex. LTC Partners, Inc. v. Collier*, 595 S.W.3d 308, 311 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (citing *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 790 (Tex. App.—Houston [14th Dist.] 2016, no pet.)).

Findings of fact and conclusions of law need not be in any particular form. *Moore v. Jet Stream Invs., Ltd.*, 315 S.W.3d 195, 208 (Tex. App—Texarkana 2010, pet. denied). But they must be in writing and filed with the clerk of the court. Tᴇx. R. Cɪᴠ. P. 296. It is possible for findings and conclusions to be contained in a trial court's letter to counsel if the letter is filed of record. *Moore*, 315 S.W.3d at 208. Here, the trial court's prejudgment letter provides an extensive explanation of the basis for its ruling, which satisfies the purpose of Rule 296. *See IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997). Moreover, the trial court expressed a clear intent to rely on these findings in support of its judgment, the trial court filed the letter ruling with the clerk of the court, the parties relied on the findings and conclusions in contesting Mary's motion for new trial, and the trial court did not subsequently issue any formal findings of fact and conclusions

6

of law. Based upon these circumstances, we hold that the trial courts letter ruling contains its findings of fact and conclusions of law pertaining to the divorce proceeding. *See In re Estate of Miller*, 446 S.W.3d 445, 452 (Tex. App.—Tyler 2014, no pet.); *Moore*, 315 S.W.3d at 208.

## IV. GROUNDS FOR DIVORCE

By her first issue,[1] Mary argues that the trial court abused its discretion by not granting the divorce on cruelty grounds because she "provided ample testimony to support and establish her claim for cruel treatment."

The family code provides that "the court *may* grant a divorce without regard to fault if the marriage has become insupportable because of discord or conflict of personalities that destroys the legitimate ends of the marital relationship and prevents any reasonable expectation of reconciliation." TEX. FAM. CODE ANN. § 6.001 (emphasis added). It also provides that "[t]he court *may* grant a divorce in favor of one spouse if the other spouse is guilty of cruel treatment toward the complaining spouse of a nature that renders further living together insupportable." *Id.* § 6.002 (emphasis added). Here, the trial court granted the divorce only on the ground of insupportability. While we agree that Mary presented sufficient evidence to support a finding of cruelty, she also pleaded insupportability as a ground for divorce, and she does not challenge the sufficiency of the evidence to support the insupportability determination. Moreover, the record contains sufficient evidence of discord and conflict between Mary and Robert to support the trial court's finding of insupportability. *See id.* § 6.001. For example, Mary testified that Robert's personality

---

[1] Robert has not filed a brief to aid us in the disposition of this appeal.

changed, that he became uncommunicative, that he became upset "about trivial things," that he drank too much, that they began sleeping in separate bedrooms two months after they were married, and that they were attending marriage counseling before the choking incident. Because the record supports both insupportability and a fault-based ground for divorce, we defer to the trial court's discretionary authority under the family code to choose among those reasons for granting the divorce. *See Villalpando*, 480 S.W.3d at 805 ("Section 6.002 does not require a trial court to grant a divorce on the basis of cruel treatment even if the record reveals evidence of cruelty. Instead, the trial court has the discretion to choose among reasons supported by the evidence for granting a divorce." (internal citations omitted)); *Baker v. Baker*, 469 S.W.3d 269, 280 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("The trial court could have concluded that the marriage should have been dissolved on the basis of cruelty, but it did not. The trial court did not abuse its discretion by granting the divorce solely on the basis of insupportability."); *Clay v. Clay*, 550 S.W.2d 730, 734 (Tex. App.—Houston [1st Dist.] 1977, no writ) (holding that the trial judge "was not required to grant a divorce to the appellant based on the jury's finding of cruel treatment, although she could have done so in her discretion"); *see also Applewhite v. Applewhite*, No. 02-12-00445-CV, 2014 WL 787828, at *2 (Tex. App.—Fort Worth Feb. 27, 2014, no pet.) (mem. op.) (holding that the trial court did not abuse its discretion by granting a divorce on the basis of insupportability instead of adultery even though one spouse stipulated to having committed two affairs); *Lisk v. Lisk*, No. 01-04-00105-CV, 2005 WL 1704768, at *5 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (mem. op.) (affirming divorce on ground of insupportability because "Husband's admission to an affair

8

does not mean the trial court was required to grant Wife the divorce on the grounds of adultery, although it would have been within its discretion to do so"). Mary's first issue is overruled.[2]

## V.    SPOUSAL MAINTENANCE

By her final issue, Mary first contends that the trial court abused its discretion by failing to award her spousal maintenance because she suffers from an incapacitating physical or mental disability that prevents her from earning sufficient income to provide for her minimum reasonable needs. *See* TEX. FAM. CODE ANN. § 8.051(2)(A). More specifically, Mary argues that the trial court's decision to deny spousal maintenance was based on an improper legal standard because "the funds expended by [Robert] for the benefit of [Mary] as part of the Temporary Orders should not be considered in deciding Mary's eligibility for post-divorce spousal maintenance." We agree.

As the Supreme Court of Texas has noted, "Chapter 8 of the Family Code allows spousal maintenance awards only under very narrow and very limited circumstances." *Dalton v. Dalton*, 551 S.W.3d 126, 130 (Tex. 2018) (cleaned up) (citations omitted). In determining whether a spouse is eligible for spousal maintenance, the factfinder must first decide whether "the spouse seeking maintenance will lack sufficient property, including the spouse's separate property, on dissolution of the marriage to provide for the spouse's

---

[2] It is also noteworthy that Mary does not explain how the trial court's failure to grant the divorce on cruelty grounds harmed her. She does not argue, for example, that the trial court's insupportability finding implicated the "division of the estate of the parties in a manner that the court deems just and right." *See* TEX. FAM. CODE ANN. § 7.001; *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981) (listing fault in breaking up the marriage as one of many factors a trial court may consider in determining a just and right division of the community estate). Indeed, Mary does not challenge the trial court's division of the marital estate at all. It is not apparent, then, how granting Mary's request to reverse and render on cruelty grounds would provide Mary with any meaningful relief.

minimum reasonable needs." TEX. FAM. CODE ANN. § 8.051. It was at this initial step where the trial court's legal analysis went down the wrong path.

The trial court rejected Mary's request for spousal maintenance based solely on a finding that Robert "has extended well over sufficient funds in support, including rent and utilities for 7 months, $10,500 for attorney's fees, $2[,]500 for moving expenses, as well as for cleaning expenses, and $7,192.00 as her portion of his retirement." In doing so, the trial court improperly credited Robert for temporary support that was immaterial to the question at hand: Upon dissolution of the marriage, would Mary lack sufficient property to meet her minimum reasonable needs? *See id.*

The purpose of temporary spousal support is to "protect[] the welfare of a financially dependent spouse between the time a petition is filed and divorce is granted." *Herschberg v. Herschberg*, 994 S.W.2d 273, 277–78 (Tex. App.—Corpus Christi–Edinburg 1999, no pet.) (citing *Garduno v. Garduno*, 760 S.W.2d 735, 742 (Tex. App.—Corpus Christi–Edinburg 1988, no writ)). Spousal maintenance, on the other hand, concerns the welfare of a financially dependent spouse after divorce. *See* TEX. FAM. CODE ANN. § 8.051; *see also id.* § 8.001(1) (defining maintenance as "an award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of another spouse"). And while the provision of temporary spousal support may be relevant to the equitable division of the marital estate, *see Herschberg*, 994 S.W.2d at 278 (noting that "adjustments for the amount of temporary support may be taken into consideration in making a just and right division of the marital estate"), we are aware of no authority in which the provision of temporary support was cited as a basis for

denying post-divorce spousal maintenance. Perhaps, under different circumstances, the provision of temporary support could be relevant to the question of spousal maintenance, but the former has no bearing on the latter in this case.

To clarify, temporary spousal support was not awarded by the trial court. *See* TEX. FAM. CODE ANN. § 6.502(a)(2) (providing that a trial court may order spousal support during the pendency of a divorce suit). Instead, after finding that Robert "committed family violence" against Mary "and that family violence [wa]s likely to occur in the future," *see id.* § 81.001, the 214th District Court granted Mary exclusive use of the marital residence for several months and ordered Robert to temporarily support Mary during that period by paying household expenses and making four monthly payments to Mary in the amount of $1,000.00. *See id.* §§ 81.021(2)(C), (4). The 214th District Court ordered Robert to provide this temporary support because each Texan "has a duty to support [his or her] spouse." *See id.* § 2.501(a); *Ex parte Hall*, 854 S.W.2d 656, 658 (Tex. 1993) ("The obligation which the law imposes on spouses to support one another . . . [is] a legal duty arising out of the status of the parties."). The 214th District Court also assessed reasonable attorney's fees against Robert—a payment he made directly to Mary's attorney—after considering Robert's income and ability to pay. *See* TEX. FAM. CODE ANN. § 81.005.

At the time Robert was excluded from the residence, he was making at least $123,000 a year,[3] and Mary was a homemaker with no source of income. Robert made

---

[3] Although he could not recall his salary in 2020, Robert testified that he made $123,000 in 2019 and that his salary continued to increase over the next several years, including $157,000 in 2021 and $163,000 in 2022.

his last monthly payment in September 2020, and Mary moved out of the marital residence the following month, with Robert paying for her moving expenses. Other than maintaining Mary on his health insurance,[4] Robert admitted at trial that he did not financially support Mary while the divorce suit continued over the next thirty months. In other words, every form of temporary support the trial court partially relied on to deny Mary's request for spousal maintenance evaporated in October 2020, long before the divorce was granted in July 2023. Thus, rather than apply the legal standard provided by § 8.051, it appears that the trial court imposed its own equitable framework, one that credited Robert for past support that was immaterial to Mary's ability to financially support herself after the divorce. Although trial courts are afforded considerable discretion to decide property matters in divorce proceedings, they must base their decisions on the criteria established by the Legislature. *See In re Facebook*, 625 S.W.3d at 86; *Kimbrough*, 681 S.W.3d at 439.

Finally, the $7,192.00 awarded to Mary as her portion of the marital estate was relevant to the sufficient property/minimum reasonable needs element; however, because the trial court's application of law to facts was substantively flawed, we cannot say that the trial court would have reached the same conclusion if it considered the sufficiency of this property in isolation.[5] *See* TEX. R. APP. P. 44.1(a)(1). Additionally, because the trial court denied Mary spousal maintenance based solely on an express negative finding as

---

[4] Robert testified that he tried to remove Mary from his health insurance, but his employer told him that he could not do so until the divorce was granted.

[5] According to the evidence presented, Mary's portion of the marital estate was the only property available to Mary to meet her minimum reasonable needs. For example, the property confirmed as Mary's separate property consisted of a cabinet, an area floor rug, and a chair. *See* TEX. FAM. CODE ANN. § 8.051 (instructing courts to consider the spouse's separate property in determining eligibility).

to the first statutory element of her claim, we cannot infer that the trial court implicitly found against Mary on the remaining element of her claim—whether Mary's claimed mental and physical disabilities prevented her from earning sufficient income to provide for her minimum reasonable needs. *See In re Doe*, 19 S.W.3d 346, 357–58 (Tex. 2000) (supreme court concluding that it could not infer under Texas Rule of Civil Procedure 299 that the trial court made an implied negative finding on the second statutory element of a claim because "omitted findings are only supplied if they are necessary to the judgment," and the trial court's express negative finding on the first element was alone sufficient to support the judgment).

Accordingly, Mary's second issue is sustained, and we reverse and remand Mary's claim for spousal maintenance to the trial court with instructions to consider her claim under the appropriate legal standard.[6] This includes determining whether Mary is eligible for spousal maintenance, and if so, the nature, amount, and duration of the support. *See* TEX. FAM. CODE ANN. §§ 8.051, 8.052, 8.054, 8.055.

## VI. CONCLUSION

We reverse and remand Mary's claim for spousal maintenance. The remainder of the judgment is affirmed.

JENNY CRON
Justice

Delivered and filed on the
15th day of May, 2025.

---

[6] Because it is not necessary to our disposition of this appeal, we do not reach Mary's other sub-issue regarding her eligibility for spousal maintenance based on Robert's history of family violence. *See* TEX. R. APP. P. 47.1.