# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00319-CV

---

**Karen Bass and Lynn Smith, in their capacity as Successor Co-Trustees on behalf of the Amended and Restated George E. Bogle and Nancy T. Bogle Joint Revocable Trust, dated March 2, 2021, Appellants**

**v.**

**George Michael Bogle and Katherine Leigh Bogle Leavitt, Appellees**

---

### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. C-1-PB-22-002842, THE HONORABLE GUY S. HERMAN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Karen Bass and Lynn Smith, in their capacity as Successor Co-Trustees on behalf of the Amended and Restated George E. Bogle and Nancy T. Bogle Joint Revocable Trust, dated March 2, 2021, appeal from the probate court's final judgment that incorporated its order granting the motion for partial summary judgment of the court-appointed guardian ad litem (GAL) for Nancy T. Bogle.[1]  For the following reasons, we affirm in part and reverse in part the

---

[1] In March 2024, appellee George Michael Bogle (Mike) filed a suggestion of death, informing this Court that Nancy T. Bogle (Nancy) died on or about February 25, 2024.  Mike represented that he anticipated the guardian ad litem (GAL) would withdraw from representing Nancy's interests and that Mike would take the GAL's place as the executor of Nancy's estate. Although Nancy is not a named party, she was the beneficiary of the operative trust during the pendency of this appeal.  This Court "will proceed to adjudicate this appeal as if [she] were alive" and continue to use her name. *See* Tex. R. App. P. 7.1 (addressing impact on appeal when party dies).

probate court's final judgment and remand the case to the probate court for further proceedings consistent with this opinion.

## BACKGROUND

**Revocable Trust Agreement and Nancy's Power of Attorney**

George E. Bogle (George) and Nancy T. Bogle (Nancy) were married and had two children, George Michael Bogle (Mike) and Katherine Leigh Bogle Leavitt (Katie) (collectively, the Children).

On January 5, 1999, George and Nancy signed a revocable trust agreement that created the "George E. and Nancy T. Bogle Joint Revocable Trust Dated January 5, 1999" (the 1999 Trust). The primary asset in the trust was 1,500 shares in USA Managed Care Organization (the Company). The 1,500 shares were 60 percent of the outstanding shares in the Company. Under the terms of the trust agreement, the trustee's powers were "exercisable in the discretion of the Trustee" and included the power "in general to deal otherwise with trust property in such manner . . . and on such terms and conditions as any individual might do as outright owner of the property." The trust agreement named George and Nancy as the original trustees, and it designated George to act as the sole trustee if Nancy became incapacitated. If George was the first to die and Nancy was incapacitated, the trust agreement provided that the Children would serve as successor co-trustees. The trust agreement also provided that the trust's income and principal were for the benefit of George and Nancy during their lifetimes, that George and Nancy "together reserve the right from time to time during their joint lifetimes . . . to

2

amend or revoke this instrument in whole or in part,"[2] that the Children were the primary beneficiaries to whom the trust assets would be distributed if they survived George and Nancy, and that the trust agreement was to be interpreted and governed by Arizona law.

On the same day that George and Nancy signed the revocable trust agreement that created the 1999 Trust (the 1999 Trust Agreement), George and Nancy signed durable powers of attorney (POA) "under the laws of the State of Arizona." Nancy's POA appointed George to serve as her agent, "effective on [her] incapacity," and if he was unable, unwilling, or unavailable to act as her agent, she appointed Mike as the "substitute or successor agent to serve with the same powers and discretions." The twenty-three-page POA also contained the following relevant provisions:

Article I. Power Over Assets

My agent is authorized in my Agent's sole and absolute discretion from time to time and at any time, as follows: . . . .

* * *

7. <u>Power to Exercise Rights in Securities</u>. My Agent is authorized to exercise all rights with respect to securities which I now own or may hereafter acquire, . . . .

* * *

14. <u>Power to Create, Fund, Amend, and Terminate Revocable Trusts</u>. My agent is authorized to execute a revocable trust agreement with such trustee or trustees as my Agent shall select, and such trust shall provide that all income and principal shall be paid to me, to some person for my benefit or applied for my benefit in such amounts as I or my Agent shall request or as the trustee or trustees shall determine, and that on my death any remaining income and principal shall be paid to my personal representative, and that the trust may be revoked or amended by me or my Agent at any time and from time to time; provided,

---

[2] The 1999 Trust Agreement provided for the creation of a Survivor's Trust after George or Nancy died and with respect to that trust, also granted the surviving spouse the right "to amend or revoke this instrument in whole or in part."

however, that any amendment by my Agent must be such that by law or under the provisions of this Durable Power of Attorney such amendment could have been included in the original trust agreement; . . . .

15.  Power to Fund Trusts Established by the Principal.  My Agent is authorized to transfer from time to time and at any time to the trustee or the trustees of any revocable trust agreement established by me before or after the execution of this Durable Power of Attorney, as to which trust I am, during my lifetime, a primary income and principal beneficiary, any and all my assets or interests in property….

16.  Power to Withdraw Funds From Trusts.  My Agent is authorized . . . to exercise, in whole or in part, release or let lapse any power of appointment held by me, whether general or special, or any power of amendment or revocation under any trust, including any trust with respect to which I may exercise any such power only with the consent of another person, even if my Agent is such other person, whether or not such power of appointment was created by me, subject however, to any restrictions on such exercise imposed on my Agent and set forth in other provisions of this Durable Power of Attorney including, but not limited to, the restrictions set forth in Article V.

* * *

Article IV.  Third Party Reliance

* * *

2.  Agent Has Power to Act Alone.  The powers conferred on my Agent by this Durable Power of Attorney may be exercised by my Agent alone, and my Agent's signature or act under the authority granted in this Durable Power of Attorney may be accepted by any Person as fully authorized by me and with the same force and effect as if I were personally present, competent, and acting on my own behalf. . . .

* * *

Article V.  Restrictions on Agent's Powers

6.  Avoid Disrupting Estate Plan.  If it becomes necessary for my Agent to liquidate my assets to provide support for me, or if liquidation or conversion of assets becomes necessary for any other reason, whether specified in this Durable Power of Attorney or otherwise, or such liquidation is deemed by my Agent to be appropriate or convenient, I direct that my Agent, to the extent reasonably possible, avoid disrupting the dispositive provisions of any estate plan of mine known to my Agent, whether or not such estate plan is embodied in a will, a trust, nonprobate property, or otherwise.  If it is necessary to disrupt the dispositive

4

provisions of such plan, then my Agent is directed to use my Agent's best efforts to restore the dispositive provisions of such plan as and when the opportunity to do so is available to my Agent. My Agent shall make reasonable efforts to obtain and review my estate plan and any person having knowledge thereof or possession of any documents implementing such estate plan is authorized to make disclosure thereof to my Agent, and to furnish my Agent with copies of such documents.

* * *

Article VII. Administrative Provisions

* * *

12.     Governing Law. This Durable Power of Attorney shall be governed by the laws of the State of Arizona in all respects, including its validity, construction, interpretation and termination. . . .

* * *

Article VIII. Declaration of the Principal

* * *

5.     Direction to Interpret Power of Attorney Broadly. It is my intention that the authorization granted herein shall not be limited by any specific grant of power made in any other provision of this Durable Power of Attorney, but that instead, these authorizations, limited only as described above, shall be given the broadest possible construction permitted by law. I further understand and have had explained to me certain judicial rules of construction that would tend to require that the broad grants made in this Durable Power of Attorney be given a narrow construction or disregarded altogether. I declare that such rules should have no application to this Durable Power of Attorney. I further declare that any court of competent jurisdiction that shall interpret or construe the grants of authority made in this Durable Power of Attorney in any restrictive way shall do so in clear and complete violation of my express intent and in utter disregard of my wishes. I declare that I have been advised by counsel of the breadth of the delegation I have made in this Durable Power of Attorney and that I understand it and desire it. I also understand that there is always the possibility of abuse of such a broad delegation of power and I accept that risk.

In 2011, George and Nancy amended the 1999 Trust Agreement to provide that after they both had died and if the Children were alive, the Company shares being held in the trust would be distributed 75% to Mike and 25% to Katie.

In 2020, George became the sole trustee of the revocable trust because Nancy became incapacitated,[3] and in March 2021, George signed the "Amended and Restated George E. Bogle and Nancy T. Bogle Joint Revocable Trust Agreement" (2021 Trust Agreement) in his capacities as the trustee, one of the grantors, and on behalf of Nancy as her agent under the POA. The 2021 Trust Agreement stated that it was the second amendment to the 1999 Trust Agreement and "a complete restatement of that document," that it "completely superseded and replace[d] all of the terms and provisions of [the 1999 Trust Agreement including the 2011 amendment]"; and that it was subject to Texas law. The document appointed Karen Bass as the successor trustee; and if Bass was unable or unwilling to serve, it appointed Mike and Katie as the successor co-trustees. It also provided a different distribution of the Company shares after the deaths of George and Nancy. The Company shares that were held in the trust were to be distributed between six persons: "10% of the 60% of the outstanding shares of [the Company] owned by the Trust" to Bass, Smith, Mike, Katie, and two other individuals involved with the Company. The distribution to the four non-family members was by life estate with their shares to be transferred to George's nephews when they died. The document also contains a severability clause:

---

[3] Nancy was diagnosed with Alzheimer's and "require[d] 24-7 medical care." In their appellees' brief, Mike and Katie "disagree with the assertion that Nancy was incapacitated when George began unilaterally changing Nancy's estate plan in 2021" and explain that, although not the subject of this appeal, they challenged the validity of the 2021 Trust Agreement and its amendments on the ground that "George was incapacitated at the time the documents were executed."

> If any wording, sentence, or article of the Trust is determined to be invalid, unenforceable, or irrelevant for any reason whatsoever the remaining portions of the Trust remain legally valid and enforceable. If a court determines that limiting any such wording in the Trust would enable it to become valid and enforceable then such wording is deemed written, construed, and enforced as so limited.[4]

George, in his capacities as the trustee, one of the grantors, and on behalf of Nancy as her agent under her POA, also signed: (i) in May 2021, a first amendment to the 2021 Trust Agreement, appointing Smith and Bass to serve as successor co-trustees; and (ii) in February 2022, a second amendment that removed Mike from receiving Company shares held in the trust on Nancy's death. George also signed a POA that appointed Katie as his agent in the event he was incapacitated. After George became incapacitated in May 2022, Bass and Smith signed an acceptance of appointments as successor co-trustees of the trust.

In October 25, 2022, Mike signed "The Fifth Amendment and Restatement to the George E. Bogle and Nancy T. Bogle Joint Revocable Trust Agreement Dated January 5, 1999" (October 2022 Fifth Amendment and Restatement), signing the document on behalf of his parents as their agent under their 1999 POAs. The amendment revoked the 2021 Trust Agreement and its first and second amendments and named Mike and Katie as co-trustees of the trust. George died on November 26, 2022, and in December 2022, an attorney on behalf of Mike notified Bass and Smith that they were removed as successor co-trustees pursuant to the October 2022 Fifth Amendment and Restatement.

---

[4] In their appellees' brief, Mike and Katie address other differences between the 1999 Trust Agreement and 2021 Trust Agreement, such as changes in the trust's structure resulting from the first spouse's death that "substantially undermined significant tax planning," but those differences do not impact the dispositive questions in this appeal concerning the probate court's order granting the GAL's motion for partial summary judgment. *See Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) ("[S]ummary judgments must stand or fall on their own merits." (quoting *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993))).

**Underlying Litigation**

At the end of December 2022, Bass and Smith, in their capacity as successor co-trustees on behalf of the "Amended and Restated George E. Bogle and Nancy T. Bogle Joint Revocable Trust, dated March 2, 2021" (the 2021 Trust), sued the Children, seeking declaratory and injunctive relief and attorney's fees. *See* Tex. Civ. Prac. & Rem. Code § 37.009 (authorizing court to award reasonable and necessary attorney's fees as are equitable and just); Tex Prop. Code § 114.064 (authorizing court to award reasonable and necessary attorney's fees "as may seem equitable and just" in proceeding under Texas Trust Code). Because of the trust dispute, the Company's accounts had been frozen, and Bass and Smith were unable to pay expenses to administer the trust, such as paying for Nancy's care. They sought a declaration that the operative trust was the 2021 Trust with its first and second amendments and that the 1999 Trust was void and inoperable, and they sought an injunction against the Children from acting as trustees. They also alleged that Mike and Katie had violated Section 114.008 of the Texas Property Code, *see* Tex. Prop. Code § 114.008 (listing remedies for breach of trust); sought reformation of George's 2022 POA to expressly revoke his 1999 POA, *see* Tex. Est. Code § 751.251 (authorizing judicial relief when action requests court to construe or determine validity or enforceability of durable power of attorney); and sought reformation of the operative trust to the extent that beneficial provisions were inadvertently omitted, *see* Tex. Prop. Code § 112.054 (authorizing reformation of trust); *see also* Ariz. Rev. Stat. § 14-10415 (authorizing court to reform terms of trust to correct mistakes).

Mike and Katie counterclaimed, seeking declarations that: (i) the 2021 Trust Agreement and its amendments be set aside, (ii) they were the successor co-trustees and that the October 2022 Fifth Amendment and Restatement that Mike signed on behalf of his parents was

valid and enforceable or, alternatively, the 1999 Trust Agreement was valid and enforceable; and (iii) the May 2022 acceptance of trusteeship by Bass and Smith was invalid. They also sought to have Bass and Smith removed as the successor co-trustees, asserted breach of fiduciary claims against Bass and Smith, and sought injunctive relief and the recovery of attorney's fees.

In February 2023, the probate court appointed the GAL to act in the best interest of Nancy, and in March 2023, the GAL filed a motion for partial summary judgment seeking for the probate court to find as a matter of law that, other than the 2011 amendment that was signed by both George and Nancy, the purported amendments to the 1999 Trust were void and invalid.[5] The GAL asserted that Nancy's estate plan was to leave her residuary estate to the Children and to have them named as the successor co-trustees and that George's purported use of Nancy's POA to amend the trust agreement "to drastically change her estate plan" and later Mike's purported use of her POA to amend the trust to change her estate plan were void and invalid. The GAL argued that Nancy's POA did not permit amendments of existing trusts, and that even if it did, pursuant to Article V, Section 6 of the POA, it did not permit substantive amendments to the 1999 Trust that would disrupt her estate plan. He also argued that the challenged amendments conflicted with the POA's provision that the trust property be paid to Nancy's personal representative on her death. *See* Tex. Est. Code § 22.031 (defining "personal representative"). The GAL's summary-judgment evidence was the 1999 Trust Agreement, the 1999 POAs, the 2011 amendment to the 1999 Trust Agreement, the 2021 Trust Agreement and its first and second amendments, and the October 2022 Fifth Amendment and Restatement.

---

[5] Mike also filed a motion for partial summary judgment, but the probate court did not rule on his motion.

9

In April 2023, the Company and non-family individuals who were designated in the 2022 Trust Agreement to receive Company shares on Nancy's death intervened in the suit, and Bass and Smith filed a response to the GAL's motion for partial summary judgment.[6] They contended that the express terms of the POA allowed the amendment of the 1999 Trust, that there were genuine issues of material fact that precluded summary judgment, and that the GAL had failed to establish for purposes of summary judgment that the 2021 Trust Agreement and its amendments were invalid as a matter of Arizona law. Bass and Smith relied on the agent's powers in Article I, Sections 7, 14, 15, and 16 and Article VIII, Section 5 of Nancy's POA and cited Arizona law. *See* Ariz. Rev. Stat. § 14-10602(e) ("A settlor's powers with respect to revocation, amendment or distribution of trust property may be exercised by an agent under a power of attorney only to the extent expressly authorized by the terms of the trust or, if the terms of the trust do not prohibit an agent from exercising powers on behalf of the settlor, to the extent expressly authorized under the power of attorney.").

As to Article V, Section 6 of the POA, Bass and Smith contended that it did not apply because its applicability was limited to the situation where the agent was liquidating assets and the 2021 Trust Agreement and its amendments that George signed did not liquidate assets. They further argued that even if that section applied, there was a fact question as to whether it was "reasonably possible" for George to avoid changing the disposition of the Company shares being held in the trust to preserve the corpus of the trust income for Nancy's benefit. Citing Mike's allegedly detrimental actions impacting the viability of the Company, they argued that "George had to change the disposition of the Trust's stock so that Mike would not have majority

---

[6] Their response also addressed Mike's motion for partial summary judgment. However, the probate court did not rule on that motion, and it is not at issue in this appeal.

10

control" and that it was "necessary to protect the Company and its ability to generate future income." And they argued that George's amendments to appoint Smith and Bass as successor co-trustees did not alter Nancy's estate plan.

Bass and Smith's response also incorporated the intervenors' response to the GAL's motion for partial summary judgment. In their response, the intervenors cited Article VIII, Section 5 in Nancy's POA directing that powers of the agent should be interpreted broadly and the overall structure and titles of the POA to argue that it expressly authorized George to amend the 1999 Trust even if it was already existing when Nancy signed the POA. In Article I, Section 14 of Nancy's POA, her agent "is authorized in [his] sole discretion from time to time and at any time, as follows: . . . Create, Fund, Amend and Terminate Revocable Trusts." The intervenors also relied on the language in Section 14 that the "trust may be revoked or amended by me or my Agent at any time and from time to time" and that her agent was "authorized to execute a revocable trust agreement with such trustee or trustees as my Agent shall select." They further relied on Article I, Section 7 that authorizes her agent to exercise rights in securities. And they argued that even if George was authorized only to create a new trust, the GAL cannot establish as a matter of law that the 2021 Trust is not a new trust because the 2021 Trust Agreement states that it completely supersedes and replaces the terms and provisions of the 1999 Trust Agreement and its 2011 amendment.

Following a hearing on the GAL's motion for partial summary judgment, the parties also filed briefs addressing choice of law issues. The GAL recognized that the 1999 POAs and the 1999 Trust Agreement were governed by Arizona law but also cited the 2021 Trust Agreement's provision that Texas law applied to it. Although the GAL represented that Arizona did not have a similar statute or such a requirement under its common law, he also

11

cited Texas Estates Code section 751.122, which addresses an agent's duty to preserve its principal's estate plan, and argued that that section may apply. *See* Tex. Est. Code § 751.122. Concerning the applicable Arizona law, the GAL cited:

(i) Ariz. Rev. Stat. § 14-10602(B)(1): "To the extent the trust consists of community property, the trust may be revoked by either spouse acting alone as to that spouse's share of the community property but may be amended only by joint action of both spouses."

(ii) Ariz. Rev. Stat. § 14-10602(E): "A settlor's powers with respect to revocation, amendment or distribution of trust property may be exercised by an agent under a power of attorney only to the extent expressly authorized by the terms of the trust or, if the terms of the trust do not prohibit an agent from exercising powers on behalf of the settlor, to the extent expressly authorized under the power of attorney."

In their response to the GAL's brief, Bass and Smith relied on the GAL's uncertainty as to which state law applied and argued that "the application of Texas law or Arizona law depends on unresolved fact questions" and that Section 751.122 of the Texas Estates Code did not apply to Nancy's POA because it explicitly states that it is governed by Arizona law. In their response to the GAL's brief, the intervenors argued that the GAL did not meet his summary-judgment burden under Arizona law and that even if Section 751.122 of the Texas Estates Code applied, he misstated it by leaving out its required factual analysis, which makes it clear that summary judgment would not be appropriate. *See* Tex. Est. Code § 751.122 (stating that agent shall preserve "to the extent reasonably possible the principal's estate plan" if he has actual knowledge of plan and preserving plan is "consistent with the principal's best interest based on all relevant factors, including [listing four factors]").

The probate court's order granting GAL's motion for partial summary judgment orders that the following "purported amendments" to the 1999 Trust Agreement were "void and

invalid as a matter of law": (i) the 2021 Trust Agreement and its first and second amendments, and (ii) the October 2022 Fifth Amendment and Restatement. On the same day that the probate court signed the order granting partial summary judgment, the probate court also signed an order granting Mike's petition to strike the plea in intervention and ordered that the purported intervenors' claims and causes of action were dismissed.

Mike, Katie, and the GAL filed a motion for entry of final judgment. They argued that the probate court's summary-judgment ruling directly or indirectly resolved all claims in the lawsuit because the 1999 Trust as amended in 2011 is the controlling trust; the claims of Bass and Smith were predicated on the validity of the subsequent amendments to the trust that the probate court had found to be void; and that Bass, Smith, and the intervenors have no interest in the controlling trust. Mike and Katie also waived their claim for attorney's fees if the motion was granted.

Bass and Smith filed a response to the motion for entry of judgment, arguing that the order could not be made final without disposition of remaining claims and issues pending before the probate court, including their claim for attorney's fees, which was not addressed in the GAL's motion for partial summary judgment. *See Youngblood & Assocs., P.L.L.C. v. Duhon*, 57 S.W.3d 63, 65 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (stating that summary judgment was not final judgment because claims for attorneys' fees remained pending); *Palacio for Estate of Palacio v. Palacio*, No. 05-18-00357-CV, 2019 Tex. App. LEXIS 3305, at *2 (Tex. App.—Dallas Apr. 24, 2019, no pet.) (mem. op.) (same). They also argued that the probate court could not imply a decision on other claims even if its summary-judgment ruling implicated a decision on those claims. *See Bill De La Garza & Assocs., P.C. v. Dean & Ongert*,

851 S.W.2d 371, 372–73 (Tex. App.—Houston [1st Dist.] 1993, no writ) (denying request to grant final summary judgment because movants had only requested partial summary judgment).

In its final judgment, the probate court determined that its summary-judgment order "moots all other claims and causes of action asserted herein by or against any party"; that Mike and Katie "have nonsuited without prejudice all of their remaining claims for relief not expressly granted herein"; and that Bass and Smith were not entitled to attorneys' fees in connection with any claim for declaratory relief. The probate court ordered that Bass and Smith "take nothing on each and all of their claims and causes of action, including Plaintiffs' claims seeking declaratory relief, statutory remedies, equitable remedies, injunctive relief, and attorney's fees," and ordered that the GAL's request for declaratory relief was granted, declaring that:

> (1) the purported Trust amendments executed on March 2, 2021, June 7, 2021, February 11, 2022 [the 2022 Trust Agreement and its amendments], and on October 25, 2022 [the October 2022 Fifth Amendment and Restatement] are void and invalid; (2) the Trust is governed by the original Trust agreement dated January 5, 1999 as amended on November 14, 2011; (3) the Plaintiffs' May 2022 Acceptance of Trusteeship is invalid because the amendments appointing the Plaintiffs as successor co-trustees are invalid; and (4) G. Michael Bogle and Katherine Leigh Bogle Leavitt are the successor co-trustees of the Trust.

The probate court also approved and ordered that the GAL's fees and expenses and the fees and expenses of a court-appointed receiver be paid from funds belonging to the trust.[7] This appeal followed.

---

[7] The probate court appointed a receiver around the time that it ruled on the GAL's motion for partial summary judgment, terminated the receivership after signing the final judgment, and then withdrew the termination of the receivership and continued it through final resolution of the appeal. In a separate but related appeal, this Court's cause number 03-23-00491-CV, Mike challenges the probate court's order withdrawing the

14

**ANALYSIS**

**Unchallenged Portions of Final Judgment**

As a preliminary matter, we address the portions of the final judgment that are not challenged on appeal. Specifically, no party has challenged the court-ordered fees and expenses to the GAL and the receiver or the probate court's declaration that the October 2022 Fifth Amendment and Restatement was void and invalid. Because they are unchallenged on appeal, we affirm those portions of the final judgment. *See $214.00 United States Currency v. State*, No. 02-14-00226-CV, 2015 Tex. App. LEXIS 3290, at *19 (Tex. App.—Fort Worth Apr. 2, 2015, no pet.) (mem. op.) (affirming portion of judgment forfeiting vehicle because it was unchallenged on appeal); *Morrell Masonry Supply, Inc. v. Brickland Homes, Inc.*, No. 14-12-00684-CV, 2013 Tex. App. LEXIS 13516, at *9–10 (Tex. App.—Houston [14th Dist.] Oct. 31, 2013, no pet.) (mem. op.) (affirming portions of summary judgment that were unchallenged on appeal).

**Challenged Portions of Final Judgment**

Turning to the challenged portions of the final judgment, in their first of two issues, Bass and Smith challenge the portion of the final judgment incorporating the probate court's order granting partial summary judgment that as a matter of law, the 2021 Trust Agreement and its amendments were void and invalid in their entirety.

---

termination of the receivership and continuing it through final resolution of the appeal. By opinion issued this same date, we affirm the probate court's order in that case.

*Standard of Review*

We review the grant of summary judgment de novo. *Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023); *see In re Estate of Kuyamjian*, No. 03-18-00257-CV, 2018 Tex. App. LEXIS 6182, at *5 (Tex. App.—Austin Aug. 8, 2018, pet. denied) (mem. op.) (stating that denial or grant of declaratory judgment requested through traditional motion for summary judgment is reviewed under traditional summary-judgment standards (citing Tex. Civ. Prac. & Rem. Code § 37.010)). "A party moving for traditional summary judgment must prove that no genuine issue of material fact exists and it is entitled to judgment as a matter of law." *Wal-Mart Stores*, 663 S.W.3d at 576; *see* Tex. R. Civ. P. 166a(c); *see also Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022) (addressing standard of review when defendant moves for traditional summary judgment). "A genuine issue of material fact exists if the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

The reviewing court must take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021); *see Zive*, 644 S.W.3d at 173 (stating that when reviewing summary judgment, courts view evidence in light most favorable to non-movant, "crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not"). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to

16

the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

Bass and Smith's issues also turn on the interpretation of documents, including Nancy's POA and the 1999 Trust Agreement, which state that they are governed by Arizona law. In our analysis, unless the parties identify a material conflict between Arizona and Texas law concerning the interpretation of these documents, we presume that the applicable rules of construction are the same under Arizona and Texas law and apply Texas law.[8] *See Vince Poscente Int'l, Inc. v. Compass Bank*, 460 S.W.3d 211, 219 (Tex. App.—Dallas 2015, no pet) (explaining when court may take judicial notice of applicable or conflicting provision of another state's law and when court may presume another state's law is same as Texas law); *see also* Tex. R. Evid. 202 (setting forth procedures for court to take judicial notice of another state's law).

Under Texas law, "[w]hen we interpret a power of attorney, we construe the document as a whole in order to ascertain the parties' intentions and rights." *In re Estate of Miller*, 446 S.W.3d 445, 455 (Tex. App.—Tyler 2014, no pet.) (citing *First Nat'l Bank in Dallas v. Kinabrew*, 589 S.W.2d 137, 145 (Tex. App.—Tyler 1979, writ ref'd n.r.e.)). "Under these rules of construction, powers of attorney, unlike deeds and wills, are to be strictly construed, and authority delegated is limited to the meaning of the terms in which it is expressed." *Id.* (citing *Avis v. First Nat'l Bank of Wichita Falls*, 174 S.W.2d 255, 259 (Tex. 1943)). "And where there is a 'very comprehensive' grant of general power and an enumeration of specific powers, the established rules of construction limit the authority derived from the general grant of power to

---

[8] In their appellees' brief, Mike and Katie cite the provision in Nancy's POA stating that Arizona law governs but argue that "[m]any of the significant actions took place in Texas" and "conceivably Texas law might be applicable in some respects" but that "the outcome is the same" whether Texas law or Arizona law applies.

17

the acts authorized by the language employed in granting the special powers." *Id.* (citing *Gouldy v. Metcalf*, 12 S.W. 830, 831 (Tex. 1889)).

"We interpret trust instruments the same way as we interpret wills, contracts, and other legal documents," focusing on the grantor's intent. *In re Ignacio G. & Myra A. Gonzales Revocable Living Tr.*, 580 S.W.3d 322, 327 (Tex. App.—Texarkana 2019, pet. denied). We "interpret a trust to give meaning to all of its provisions and to enact the intent of the grantor," "ascertain a trust grantor's intent from the language contained in the trust's four corners[,] and focus on the meaning of the words actually used, not what the grantor intended to write." *In re Estate of Kuyamjian*, 2018 Tex. App. LEXIS 6182, at *6; *see In re Ignacio G. & Myra A. Gonzales Revocable Living Tr.*, 580 S.W.3d at 328 (stating rules for interpreting trust documents). "The meaning of a trust instrument is a question of law when there is no ambiguity as to its terms," but "when the trust instrument's language is uncertain or reasonably susceptible to more than one meaning," it is ambiguous, and "its interpretation presents a fact issue precluding summary judgment." *In re Ignacio G. & Myra A. Gonzales Revocable Living Tr.*, 580 S.W.3d at 328 (citing *Lee v. Rogers Agency*, 517 S.W.3d 137, 145 (Tex. App.—Texarkana 2016, pet. denied)); *see also Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743–44 (Tex. 2020) (describing when agreement is ambiguous and explaining that with any deed or contract, court's "task is to determine and enforce the parties' intent as expressed within the four corners of the written agreement" and that courts "consider the entire agreement and, to the extent possible, resolve any conflicts by harmonizing the agreement's provisions"); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (describing rules for construing written contract and

explaining that if words of contract can be given certain or definite legal meaning or interpretation, it is unambiguous and court construes it as matter of law).[9]

*Did Nancy's POA authorize George to amend the 1999 Trust?*

We begin with the threshold question of whether Nancy's POA authorized George as her agent to amend the 1999 Trust in any respect. Bass and Smith argue that the probate court erred in granting summary judgment as to the 2021 Trust Agreement and its amendments because the GAL failed to conclusively establish that under Arizona law, George did not have authority to sign the instruments as Nancy's agent pursuant to her POA.

In his motion for partial summary judgment, the GAL argued that the POA did not authorize George to amend an existing revocable trust but authorized "the creation of a new trust," focusing on language in Article I, Section 14 that her agent "is authorized to execute a revocable trust agreement with such trustee or trustees as my Agent shall select." Because the 1999 Trust was already existing, the GAL argued that George was not authorized to amend it. The GAL also argued that the purported amendments to the 1999 Trust were invalid and void because the POA did not permit substantive amendments of the trust, "especially if those amendments disrupted [Nancy's] estate plan." As support, the GAL cites Arizona statutory provisions. *See* Ariz. Rev. Stat. § 14-10602(B), (E).

---

[9] *See, e.g.*, Ariz. Rev. Stat. §§ 14-5501 (addressing creation and validity of durable power of attorney), 14-10112 (stating that rules of construction that apply in Arizona to interpretation of and disposition of property by will also apply as appropriate to terms of trust); *In re Estate of Pouser*, 975 P.2d 704, 708–09 (Ariz. 1999) (addressing rules for interpreting wills under Arizona law, including that courts consider text of will as whole and, "when appropriate, the circumstances at the time it was executed" and that extrinsic evidence is not admissible to contradict will's plain language); *see also Focus Point Props., LLC v. Johnson*, 330 P.3d 360, 367 (Ariz. Ct. App. 2014) (holding that when contract is not ambiguous, court construes it as matter of law but when it is ambiguous, "determining what the parties intended is a question of fact").

The GAL's evidence to support his motion for partial summary judgment were the documents themselves. We first determine whether Nancy's POA and the 1999 Trust establish as a matter of law that George was not authorized to make any amendments to the 1999 Trust on Nancy's behalf. *See In re Estate of Miller*, 446 S.W.3d at 455 (construing power of attorney as whole); *see also Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 888 (Tex. 2021) (explaining that courts construe words in context in which they are used and avoid construing contracts in way that renders contract language meaningless); *In re Estate of Kuyamjian*, 2018 Tex. App. LEXIS 6182, at *6 (ascertaining trust grantor's intent from language contained in trust's four corners, focusing on meaning of words actually used, "not what the grantor intended to write").

Looking to the overall structure of the POA and the powers granted to her agent in its Article I, Nancy authorized her agent in the agent's "sole and absolute discretion from time to time and at any time, as follows:" the "Power to Create, Fund, Amend, and Terminate Revocable Trusts," and in contrast to the general rules for construing a POA, Nancy's POA contains a directive that her agent's powers be interpreted "broadly." This provision expressly provides that "the authorization granted herein shall not be limited by any specific grant of power made in any other provision of this Durable [POA], but that instead, these authorizations, limited only as described above, shall be given the broadest possible construction permitted by law" and that rules requiring a narrow construction "have no application" to her POA. In Article I, Section 16, Nancy also authorized her agent "to exercise, in whole or in part, . . . any power of amendment or revocation under any trust, including any trust with respect to which I may exercise any such power only with the consent of another person, even if my Agent is such other person." Considering these provisions in the context of Nancy's POA as a whole, they make

20

clear that the POA authorized George to amend the 1999 Trust on Nancy's behalf. The GAL did not argue, and the probate court did not conclude, that any provision in Nancy's POA was void or invalid.

We also observe that the 1999 Trust Agreement, which George and Nancy signed on the same day as their POAs, explicitly provides that George and Nancy "together reserve the right from time to time during their joint lifetimes . . . to amend or revoke this instrument in whole or in part" and that the trustee's powers included the power "in general to deal otherwise with trust property in such manner . . . and on such terms and conditions as any individual might do as outright owner of the property.[10] *See In re Ignacio G. & Myra A. Gonzales Revocable Living Tr.*, 580 S.W.3d at 328 (explaining that in interpreting trust documents, courts may consider "surrounding circumstances" to determine "appropriate meaning to ascribe to the language chosen by the parties" (quoting *Lee*, 517 S.W.3d at 145)). And as to the Arizona statutory provisions that the GAL cited to the probate court, even if these provisions conflicted with Texas law, neither provision generally prohibits a POA from authorizing an agent to act on the person's behalf to amend or revoke a trust. *See* Ariz. Rev. Stat. § 14-10602(B)(1) (requiring amendment of revocable trust "by joint action of both spouses" when community property is being held in trust but not addressing power of attorney to do so), (E) (addressing "powers with respect to revocation, amendment, or distribution of trust property" and permitting exercise of powers through POA if authorized under POA).

Considering Nancy's intent as expressed in the language of the POA, we conclude that the GAL failed to establish as a matter of law that the POA did not grant George power to

---

[10]    *See, e.g.*, Ariz. Rev. Stat. § 14-10602(A) (authorizing settlor to revoke or amend revocable trust subject to "any limitations prescribed in the terms of the trust").

amend the 1999 Trust Agreement on Nancy's behalf. This conclusion, however, does not resolve this appeal because even if George generally had the authority to amend the 1999 Trust Agreement on Nancy's behalf, the GAL also challenged George's authority to amend the agreement in the manner that he did—specifically whether he was authorized to amend the distribution of trust assets on the death of Nancy and to replace the named successor co-trustees. We address each in turn.

*Did Nancy's POA authorize George to amend the distribution of trust assets?*

The GAL argued that Nancy's POA did not authorize George to change the distribution of the trust assets on Nancy's death, relying on Article I, Section 14, the provision authorizing George to amend trusts. In this provision, Nancy authorized her agent to amend a revocable trust but expressly limited this authority by stating that "on my death any remaining income and principal shall be paid to my personal representative." *See* Tex. Est. Code § 22.031(a)(1) (defining "personal representative" as including executor or independent executor). Under the terms of the 1999 Trust Agreement, the remaining trust property was to be distributed to the Children, consistent with Nancy's estate plan. In direct conflict with this term, the 2021 Trust Agreement and its second amendment provided that on the death of Nancy, the Company shares held by the trust would be distributed to persons other than the Children. Based on the explicit limiting language in Article I, Section 14, we conclude that by changing the distribution of Company shares on Nancy's death in the 2021 Trust Agreement and its amendments, George exceeded his authority under the POA as a matter of law. *See Piranha Partners*, 596 S.W.3d at 743–44; *Coker*, 650 S.W.2d at 393. Thus, we conclude that the probate court did not err in part by granting summary judgment and declaring that the 2021 Trust

22

Agreement and its amendments were void and invalid to the extent that they amended the distribution of the trust property on Nancy's death to persons other than her personal representative.

*Did Nancy's POA authorize George to amend the Successor Co-Trustees?*

We reach a different conclusion concerning George's authority under Nancy's POA to replace Mike as the successor trustee under the 1999 Trust Agreement with Bass and Smith as the successor co-trustees under the 2021 Trust Agreement and its amendments. In Article I, Section 14 of the POA, Nancy explicitly authorized her agent "to execute a revocable trust agreement with such trustee or trustees as my Agent shall select." Based on this provision's plain language, we conclude that Nancy authorized George to amend the 1999 Trust to appoint different trustees.

The GAL's summary-judgment motion challenged George's authority to select Bass and Smith as the successor co-trustees based on Article V, Section 6 in the POA, the provision directing her agent to "avoid disrupting" her estate plan. But that provision specifically addresses the situation when it has become necessary for her agent to liquidate her assets:

> If it becomes necessary for my Agent to liquidate my assets to provide support for me, or if liquidation or conversion of assets becomes necessary for any other reason, whether specified in this Durable Power of Attorney or otherwise, or such liquidation is deemed by my Agent to be appropriate or convenient, . . . .

In several other provisions of the POA—the provisions addressing her agent's powers to demand and receive certain assets, as to employment benefits, to withdraw funds from trusts, and to make gifts to Nancy's "descendants and their spouses"—Nancy also included a similar directive to her

23

agent concerning the disruption of her estate plan. In contrast to those provisions, Article I, Section 14—the provision authorizing her agent to select trustees in the context of amending revocable trusts—does not include similar language concerning the disruption of her estate plan. Had Nancy intended a similar restriction in Article I, Section 14, she could have said so. *See Sundown Energy LP*, 622 S.W.3d at 888; *In re Estate of Miller*, 446 S.W.3d at 455.

We also observe that even when it becomes necessary for Nancy's agent to liquidate assets, Article V, Section 6 is not a blanket prohibition but contemplates that it might be necessary for her estate plan to be disrupted:

> . . . I direct that my Agent, to the extent reasonably possible, avoid disrupting the dispositive provisions of any estate plan of mine known to my Agent, . . . . If it is necessary to disrupt the dispositive provisions of such plan, then my Agent is directed to use my Agent's best efforts to restore the dispositive provisions of such plan as and when the opportunity to do so is available to my Agent.

*See Sundown Energy LP*, 622 S.W.3d at 888. It follows that, even if this provision applied and naming successor co-trustees disrupted Nancy's estate plan, whether it was "reasonably possible" for George to name different successor co-trustees without disrupting Nancy's estate plan is a fact question. *See, e.g.*, *Freeport-McMoRan Oil & Gas LLC v. 1776 Energy Partners, LLC*, 672 S.W.3d 391, 399 (Tex. 2023) (describing "reasonableness" as entailing "objective inquiry" and stating that "questions of reasonableness must be submitted to a factfinder when a genuine disagreement *about the facts* prevents the law from generating an objective answer"); *see also* Tex. R. Civ. P. 166a(c) (requiring movant to establish that it is entitled to judgment as matter of law).[11] And the 2021 Trust Agreement contains a severability clause, such that "[i]f

---

[11] *See, e.g.*, *In re Estate of Jung*, 109 P.3d 97, 102 (Ariz. Ct. App. 2005) ("Issues of reasonableness are generally questions of fact.").

any wording, sentence, or article of the Trust is determined to be invalid [or] unenforceable," "the remaining portions of the Trust remain legally valid and enforceable."

*Conclusions as to Probate Court's Summary Judgment Ruling*

Based on the above analysis of the relevant provisions of Nancy's POA and the trust agreements, we conclude that the probate court erred to the extent that it granted summary judgment and declared that the appointments of Bass and Smith as successor co-trustees in the 2021 Trust Agreement and its amendments were void and invalid. Further, based on our conclusion above that Nancy's POA generally authorized George to amend the 1999 Trust Agreement, we also conclude that, except as to the provisions in the 2021 Trust Agreement and its amendments that amended the distribution of trust assets on Nancy's death, the GAL did not establish as a matter of law that the remaining portions of the 2021 Trust Agreement and its amendments exceeded George's authority under Nancy's POA. *See Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) ("[S]ummary judgments must stand or fall on their own merits." (quoting *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993))). Thus, except as to the provisions amending the distribution of the trust assets on Nancy's death, the probate court erred in granting summary judgment and declaring in the final judgment that: (i) the 2021 Trust Agreement and its amendments were void and invalid, (ii) Bass and Smith's acceptance of trusteeship was invalid, and (iii) Mike and Katie are the

In support of his motion for summary judgment, the GAL also cited Section 751.122 of the Texas Estates Code, but even if that statute applied to Nancy's POA, it would not support the probate court's conclusion that as a matter of law, George was not authorized to name different successor co-trustees in the 2021 Trust Agreement and its amendments. *See* Tex. Est. Code § 751.122 (requiring factual analysis of factors to determine if preserving estate plan is "consistent with the principal's best interest").

25

successor co-trustees. On these bases, we sustain in part and overrule in part Bass and Smith's first issue.[12]

**Challenge to Final Judgment as to Other Claims**

In their second issue, Bass and Smith argue that even if the probate court properly granted the GAL's motion for partial summary judgment, the probate court erred in granting the final judgment based on its erroneous conclusion that its summary-judgment ruling necessarily mooted the remainder of the case and that the probate court could not rule on claims that the GAL did not address in his motion for summary judgment. *See G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (granting summary judgment on claim that was not addressed in summary-judgment motion is generally reversible error); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002) ("A court cannot grant summary judgment on grounds that were not presented."). For example, they contend that the probate court's summary judgment did not include rulings that addressed their claims seeking reformation of the 2021 Trust Agreement and its two amendments or their claims for attorney's fees.

Given our disposition above as to their first issue, we need not further address these arguments. Because we have concluded that the probate court erred in part when it granted the GAL's motion for partial summary judgment and declared the 2021 Trust Agreement and its amendments void and invalid, it follows that the probate court necessarily erred when it

---

[12] To the extent that Mike and Katie raise arguments that were not raised before the probate court in support of the probate court's order granting the GAL's motion for partial summary judgment, we do not address those arguments. *See Amedisys, Inc.*, 437 S.W.3d at 511 ("[S]ummary judgments must stand or fall on their own merits." (quoting *McConnell*, 858 S.W.2d at 343)).

26

dismissed the remaining claims of Bass and Smith based on that ruling. On this basis, we sustain Bass and Smith's second issue.

## CONCLUSION

For these reasons, we affirm the probate court's final judgment to the extent it declared that the purported trust amendment executed in October 2022 by Mike on behalf of his parents was void and invalid and awarded fees and expenses to the GAL and the receiver. We also affirm the final judgment to the extent that it declared that the provisions in the 2022 Trust Agreement and its amendments that changed the distribution of the trust assets on Nancy's death were void and invalid. We reverse the remainder of the final judgment and remand the case to the probate court for further proceedings consistent with this opinion.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Smith and Theofanis

Affirmed in Part; Reversed and Remanded in Part

Filed: July 18, 2024